Upon trial on an indictment charging murder in the first degree of Reginald Williams, appellant was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for a term of fifteen years.
No contention is made on appeal that the evidence was not sufficient to justify the verdict of the jury, and we see no reasonable basis for such a contention.
There is little, if any, need for a recitation of any of the evidence, but a brief summary of some of it is here given.
The principal witness for the State was Charles Taylor, an acquaintance of both the *Page 1078 
victim and defendant. He testified that on January 11, 1974, at 108 Princeton Avenue, S.W., Birmingham, he and Williams were sitting in the den of the house when defendant entered. He heard a discussion between defendant and Williams, in which each said that he had heard that the other had "snitched on him." After further discussion among the three, defendant invited Williams to step outside. The witness said, "I went out front to see who was out there.", and there he saw defendant's wife in an automobile, went over and talked with her, and while doing so heard some (more than three) shots. He turned around at the first shot, saw defendant and Williams on the porch, saw defendant shooting Williams with a pistol; he saw Williams back up against the porch and holler, "Oh." He said defendant then pointed the pistol at Taylor; that he ran and then left the scene in his automobile, returned in about ten minutes and observed Williams lying on the floor of the den, dead.
An autopsy showed that one bullet entered the victim's right chest, one his left chest and one his head, which was fatal.
The testimony of defendant and his wife, the only other witnesses who saw the fatal encounter, was different in some material respects. They testified that defendant and the victim had been talking at the house, that as the victim saw defendant's wife in the automobile, he began to curse her, that a three-person fight took place among the victim, defendant and Charles Taylor, that Charles Taylor had a pistol and that Williams had a knife. In the course of the struggle, defendant grabbed the pistol and shot it four or five times and then he and his wife left the scene in their automobile.
The credibility of the testimony of Taylor was justifiably challenged by defendant by reason of his admitted convictions of some crimes involving moral turpitude and the friendly relationship between the witness and the victim, which included joint participation in one or more of the crimes.
The evidence was sufficient for the jury to have concluded that Taylor was testifying falsely as to material facts, that either defendant was acting in self defense in killing Williams or that he did not voluntarily kill him, but this was in the exclusive province of the jury, and it cannot be said that the verdict was palpably wrong or unjust.
The State was permitted to show by a Birmingham detective, over the objection of defendant, that on February 8, 1973 the victim Williams made a statement to the witness implicating the defendant in a burglary. Before the witness was allowed to answer, a hearing was conducted out of the presence of the jury in which the following occurred:
 "THE COURT: What does the statement purport to show — relate to?
 "MR. PICKARD: A statement of Reginald Williams to Sgt. Patmon that Warren Hill had borrowed his car and used it in a burglary and sold some of the items taken in the burglary and given him part of the money, which the State claims that this is an exception to the hearsay rule to show motive, design, scheme and plan. There has been evidence brought out on both sides that the defendant snitched on the deceased and the deceased snitched on the defendant.
 "THE COURT: Right. Now a motive, scheme, plan or design I don't think that would apply.
"MR. PICKARD: Motive.
 "THE COURT: Yes, motive. I'll need to know also exactly what he's going to say about this conversation because it's going to have to be restricted carefully.
 All right, now, Mr. Pickard, what — how far are you going to start on this and how far are you going to go?
 "MR. PICKARD: The only portion of the statement that I'm interested in is that Warren borrowed the car from Reginald and that he returned with a stolen T.V. in the car and gave him part of the money for it.
 "MR. PARKER: Of course I'm going to object to any of this on two grounds. First, that it is hearsay; secondly, it is prejudicial. It is evidence of a separate *Page 1079 
offense altogether than this case right here and therefore it becomes prejudicial. It is not a conviction. It is just alleged information concerning an offense.
 "THE COURT: All right, I'm going to overrule it. Bring the jury in. Carefully restrict it to that, Mr. Pickard."
Thereupon, in the presence of the jury the following occurred:
"THE COURT: Proceed, Mr. Pickard.
 "Q. (BY MR. PICKARD) Sgt. Patmon, will you tell the ladies and gentlemen of the jury in substance what was told to you?
 "MR. PARKER: We object to it and assign as grounds it is hearsay and it is an attempt to prejudice this jury against this defendant.
"THE COURT: Overruled.
"MR. PARKER: We except.
 "A. Reginald Williams stated that he had loaned his car to defendant, Warren Hill, and that when Warren returned the car to him or came back with the car he had some stolen merchandise in it that was taken in a burglary. He went with Warren, they transferred the stolen property from Reginald Williams' car into Warren Hill's car and they went and sold the T.V. and Reginald Williams got part of the money.
"MR. PICKARD: That's all, Mr. Patmon."
The record supports the remark of counsel for the State that there was evidence that on the occasion of the fatal altercation, the victim told defendant and the defendant told the victim that the other "had snitched on him." As shown by the quoted portion of the record, the State on the trial contended that the evidence of what the victim had said was admissible to show motive. When the State had rested its case, the Court instructed the jury as follows:
 "THE COURT: Who is the next witness? . . . . Ladies and gentlemen, this testimony with reference to the statements made by Reginald Williams is in for one purpose only. There has been some evidence in the past, yesterday as I recall, about somebody snitching on somebody or somebody snitching on somebody else and vice versas. The purpose of this testimony today is only on that point; namely, on the point of motive. The fact that who arrested who or who was tried or who did what and the fact that an arrest was made on anyone else involved is irrelevant and has absolutely nothing to do with this case and should be ignored by you. As I said, the only purpose is to show some possible motive, if there be a motive, based on what was gone into by either one or both sides yesterday. And with that, who is the next witness?"
The reason for the objection to the testimony was definitely stated, that it is "hearsay" and that it is "prejudicial." In appellant's brief, it is argued that the testimony constituted inadmissible hearsay, and that its admission in evidence violated the exclusionary rule as to testimony of other crimes and not within an exception to that rule in shedding light on "motive, any scienter or identity, and so tend to establish the guilt of the party of the offense of which he is being tried" as set forth in Jackson v. State, 229 Ala. 48, 155 So. 581,582.
At least three separate and distinct phases of the law of evidence are alluded to in the quoted portions of the record pertaining to the question now considered: motive, hearsay and its exceptions, and other crimes (offenses). Consideration of the phases separately, rather than jointly, should be helpful in attempting a correct solution of the problem raised. The principle that evidence of defendant's commission of another crime is admissible if it tends to show motive for the commission of the crime charged is well established. Miller v.State, 130 Ala. 1, 30 So. 379, and numerous other cases cited in McElroy, Law of Evidence in Alabama, § 70.12 (4). As the author points out, with a citation of authorities, in § 69.01 (1), proof of "accused's commission of another crime" or "misdeed" may be made whenever "it tends to prove his guilt otherwise than as tending to prove guilt via bad character." This presupposes, however, that the evidence is not subject to some valid objection, which could be many *Page 1080 
and various, including the exclusionary hearsay rule in the absence of an exception to it.
The parties do not seem to be at issue, and we do not now decide, whether the defendant's commission of the crime imputed to him by Williams' statement to Sgt. Patmon was provable by legal evidence as tending to show a motive in defendant to kill Williams.
We do decide that if defendant's commission of the crime imputed to him by Williams' statement to Sgt. Patmon was provable by legal evidence as tending to show a motive in the defendant to kill Williams, Sgt. Patmon's testimony was inadmissible for the reason that it was hearsay evidence of the defendant's conduct, and did not come within any exception to the hearsay rule. Kitchens v. State, 251 Ala. 344, 346,37 So.2d 428, citing, among other supporting decisions, Holland v.State, 162 Ala. 5, 50 So. 215.
In Kitchens v. State, supra, Kitchens who was being tried for the alleged murder of his wife, claimed that the killing was accidental, and introduced evidence tending to show the existence of a harmonious domestic relationship between him and his wife. The Supreme Court held that the trial court erred in admitting evidence, offered by the State as tending to show a non-harmonious relationship, that a few days before the wife was killed, she stated to a justice of the peace that defendant had made threats against her life. The Supreme Court said that such evidence was "pure hearsay"; and held, in effect, that there was no hearsay exception for statements in general by the victim in a charge of homicide; and that the wife's statement did not come within any exception to the hearsay rule.
The testimony of Sgt. Patmon as to what was told him by the victim was objectionable as hearsay, and the admission of such testimony, over the objection of the defendant, constituted prejudicial error. We must, as was done in Kitchens, reverse the judgment of the trial court.
On the question of the admissibility of the testimony of what was said by the victim, appellee relies upon Manassa v. State,47 Ala. App. 287, 253 So.2d 356, wherein one Marcum a detective, was allowed to testify in a robbery case to a conversation with one Giles, the owner of the pistol allegedly used by the defendant in the robbery, which conversation was repeated to defendant at the time of defendant's arrest.
Manassa is not in point. There, the admissibility was based upon the repetition to defendant of what the witness had been told. In the instant case, there was no contention on the trial, and there is no just basis for any contention on appeal, that the statement of the victim was repeated to defendant by the witness. The witness was merely testifying to what the victim told the witness. That, is hearsay, as the State conceded on the trial, and the State offered it as an exception to the hearsay rule, which it is not.
During direct examination of defendant, the following occurred:
 "Q. Incidentally, you had been convicted of grand larceny before, haven't you?
"A. Yes, sir, it was a —
"MR. PICKARD: I object to that.
 "THE COURT: I'll sustain it. Exclude that, ladies and gentlemen."
On cross-examination, the following occurred:
 "Q. (BY MR. PICKARD) That conviction for grand larceny was larceny from the person?
"MR. PARKER: I object to that.
"MR. PICKARD: He opened the door.
 "MR. PARKER: He objected to me questioning about it, so I object to him questioning about it.
 "THE COURT: I'll oberrule your objection as I did his.
"MR. PARKER: I thought you sustained his, Judge.
"THE COURT: I'll overrule yours now, then.
"MR. PARKER: All right. We except.
"Q. That was larceny from the person, wasn't it? *Page 1081 
"A. I'm not sure it was larceny from the person.
"Q. You were originally charged with robbery?
"A. My car was involved —
 "MR. PICKARD: I object, trying to prejudice the jury now. (sic)
 "THE COURT: As I understand, the only question is was it larceny from the person.
"Q. Were you indicted in the case?
"A. Yes, sir, charges were brought against me.
"Q. Huh?
 "MR. PARKER: Now, Judge, I'm going to object to this. I think I know what he's going to try to do. This man has admitted a conviction for larceny and he's going to try to bring in something that is completely —
 "THE COURT: I have already — if this is the matter we have discussed —
 "MR. PARKER: It is not that, but he is going to try to —
 "THE COURT: All right, ladies and gentlemen, you will have to be excused. Retire to the jury room for a moment.
 "(WHEREUPON, the jury was retired to the jury room and the following proceedings were had and done outside the presence and hearing of the jury:)
 "THE COURT: All right, Mr. Pickard, what are you about to do that is illegal?
 "MR. PICKARD: The case was pled (sic) guilty to, larceny from the person, you were indicted in that case, weren't you?
 "MR. PARKER: No that's what I was objecting to. Now a man could be convicted and —
 "THE COURT: Right. Right. I'm going to sustain the objection he could have been indicted for murder, guilty of robbery or something else. Is that all?"
After the last quoted portion of the proceeding out of the presence of the jury, the court and the attorneys continued the colloquy but on an entirely different subject. Nothing further was said, either in the presence of the jury or out of the presence of the jury, relative to the issue between the attorneys as to interrogation by one or both of them relative to the prior conviction of defendant.
It is urged by appellant that the court erred in not allowing defendant's attorney, on direct examination of defendant, to show that he had been convicted of grand larceny and that such alleged error was compounded by the court's allowing counsel for the State to show, or attempt to show, that he had been convicted or indicted for larceny from the person. The contention is made that, as the State can show, after defendant has taken the stand as a witness for himself, that he has been convicted of a crime involving moral turpitude, defendant should be allowed to show such fact in anticipation of the presentation of such evidence on cross-examination. In Garvinv. Robertson, 289 Ala. 60, 265 So.2d 602, a witness for plaintiff testified on direct examination that he had been convicted of robbery. Appellant relies heavily upon a statement in Garvin as follows:
 ". . . Plaintiff probably anticipated that evidence of the conviction might later be offered and acted within her rights in adducing this evidence without waiting for its adduction by defendant."
The point under consideration by the court at the time was whether after conviction had been shown on direct examination of the witness the adverse party would be allowed to show what defendant had robbed, and the court held: "It was not permissible for defendant to go into the details of such offense."
We agree with appellant that the State was not correct in its contention on the trial that defendant had opened the door to such an extent that the State would be able to show details of the grand larceny conviction. This conclusion is in accordance with Garvin, but it does not necessarily follow that the language first quoted above from Garvin necessitates a conclusion that there was error in not allowing defendant to show on direct examination that he had been convicted of grand larceny. At any rate, we are convinced that the "tit for tat" *Page 1082 
between counsel did not in any way work to the injury of defendant. The jury knew no more after the colloquy than that which both parties seemed to want it to show, that defendant had been convicted of grand larceny. The answer of defendant, "I'm not sure it was larceny from the person.", left the issue between the parties in mid-air. The entire matter is somewhat complicated from our standpoint in that it appears that counsel for both parties and the court had something in mind that is not fully revealed by the verdict, something that defendant's counsel said that State's counsel was "going to try to do." After the conference out of the presence of the jury, no further questions were asked the witness as to a conviction and no further point was made on the subject. We conclude that the affair as a whole was without harm to defendant and that no error prejudicial to him is to be found in any of the rulings of the court on the subject.
A third contention of appellant is that in six particulars counsel for the prosecution overstepped the bounds of legitimate argument to the prejudice of defendant. In some of the instances complained of, defendant's objections were sustained and the argument excluded. In others, the court overruled defendant's objections. As the same considerations will not likely be presented on another trial, we now forego a decision as to them.
For the error indicated, the judgment of the trial court should be reversed and the case remanded for another trial.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.