LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of murder in the first degree of Flora Dean Polk by shooting her with a shotgun and fixed his punishment at imprisonment for life. He was sentenced accordingly.
Appellant’s first assertion of error is to the effect that the court erred in denying defendant’s motion for a new trial for the reason that at the time the alleged crime was committed there was no crime of mur *1064 der in the first degree in Alabama, that such crime had been abolished and repealed by Act No. 607, Acts of 1977, which has become the Criminal Code of Alabama, Title 13A, Code of Alabama 1975. It is correct that Acts 1977, No. 607, did purport to provide that upon the effective date of that Act, any crime that theretofore constituted murder in the first degree, as well as some other designated and defined unlawful homicides, constitutes murder and is punishable “by imprisonment in the penitentiary for not less than 10 years to life.” The particular cited Act also provided that its effective date was May 17,1978. However, by Acts 1978, No. 770, p. 1110, § 1, the effective date was changed to June 1,1979, and by Acts 1979 No. 79-125, the effective date was again changed to January 1,1980.
The undisputed evidence shows that the alleged crime was committed in October 1979, at which time the present Criminal Code had not gone into effect. Defendant was properly indicted and tried for murder in the first degree, as well as any lesser included offense, pursuant to the previously existing statutory law as contained in Code of Alabama 1940 (Recompiled 1958) § 314. Appellant’s contention in this respect cannot be sustained.
The evidence is entirely circumstantial as to the commission of the alleged crime and defendant’s participation therein, but it is substantial and strong as to both. There is no contention that it is not sufficient to justify submission to the jury of the issue as to defendant’s guilt, except in one particular as to an alleged variance to be discussed hereafter, and except as it is found in appellant’s argument that the evidence can be reasonably reconciled with the theory that some other person or persons may have committed the crime and for that reason the evidence was not sufficient. Such contention will also be discussed hereafter. No useful purpose would be served by a lengthy narration of the evidence. A meager summary is sufficient.
The alleged victim was the mother of defendant’s wife. The victim was killed on the night of October 27-28, 1979. Defendant’s wife was in Oklahoma at the time. There had been extremely hard feelings between them. Living with the victim in Moulton, Alabama, were four children of defendant’s wife. Defendant had no children. Before midnight October 27-28, 1979, defendant and Lewis Goode came to the house where the victim and the four children were living and entered the house. There was testimony by witnesses for the State to the effect that defendant had a shotgun with him and demanded to know where his wife was and that the victim told him that she did not know. He searched the house and did not find his wife. One of the witnesses testified:
“A. And they took her [the alleged victim] outside in the middle of the road, and she was screaming and hollering. And she said, ‘Thomas, please don’t shoot me.’ and—
“Q. Well, had Thomas said he was going to shoot her?
“A. He had the gun pointed at her.
“Q. Thomas had the gun pointed at your grandmother?
“A. Yeah.”
According to further testimony of the witness, the wife of Lewis Goode was sitting in an automobile parked near the house at the time. After defendant and Goode had taken his grandmother out of the house, they came back in and the following occurred:
“A. He said, T am going to count to three, and if you don’t tell me where she is at, I am going to shoot you.’ and he got to two and she — my grandmamma said that she was down at Willie Pearle’s.
“Q. Who was he asking about, who was?
“A. Thomas was asking where Jessie Pearle was.
“Q. You said Thomas was holding the gun; how was he holding it?
“A. He was point it at her.
“Q. He had the gun pointed at your grandmother?
“A. Yes.—

“Q. You said that after that they left, that is, your grandmother and Thomas and Lewis—
*1065 “A. And Lewis.

“Q. And then what happened?
“A. And we told Emmitt and he went and told Wamon and and then they called the police, and that is all.”
Law enforcement authorities were notified promptly. The body of the victim was found about 5:30 A.M. on October 28, on a side road near some trees. A forensic pathologist testified that her death was caused by shotgun wounds. The previously mentioned shotgun was found about 7:00 A.M. lying in a ditch. There was expert testimony that the shots that killed the victim were fired from the mentioned gun. Defendant, testifying in his own behalf, denied killing the victim. He admitted that he had been on a spree looking for his wife, that he had been drinking a great deal of beer and that he had been with Lewis Goode and his wife a large part of the first half of the night of October 27-28, 1979.
Appellant’s second assertion of error is directed to the action of the court in overruling defendant’s objection to questions asked Attorney Jimmy Speake, a witness called by the State, as to what the alleged victim stated to the witness on two occasions about two weeks prior to her death, as shown by the following part of the transcript:
“Q. Did you have a conversation with them [the victim and defendant’s wife] on that date?
“A. Yes, sir.
“Q. And did you have another conversation with Mrs. Polk later, two or three or four days later?
“A. Yes, sir, the following Monday on the 15th.
“Q. Okay. Now, referring to the conversation on the 13th, did Mrs. Polk relate to you any information concerning herself and her son-in-law, Thomas Harris?
“A. She was in my office—
“MR. ROGERS: Judge, we are going to object to this line of testimony as being remote and immaterial and irrelevant, and the comments and transactions as took place out of the presence of the Defendant.
“THE COURT: Well, I take it that you are offering this to show prior difficulties between—
“MR. LITTRELL: Prior difficulties and motive.
“THE COURT: All right, overruled.
“MR. ROGERS: We take exception.
“BY MR. LITTRELL:
“Q. With reference to the conversation on October 13th with Mrs. Polk, and I believe her daughter was also present, what, if any information, was related to you concerning Mrs. Polk in her relation with her son-in-law by Mrs. Polk?
“MR. ROGERS: Judge, I object on the basis that it’s hearsay, and the statements are all outside the presence of the defendant.
“THE COURT: All right, you can confine it. You will have to phrase your question different, not with reference to details, but just what the transaction was.
“MR. LITTRELL: All right.
“BY MR. LITTRELL:
“Q. Mr. Speake, did Mrs. Polk relate to you any information concerning a threat by her son-in-law, Harris, to herself?
“A. Yes, sir.
“Q. Would you tell us what it was?
“MR. ROGERS: We object, Your Honor.
“THE COURT: Sustained. You can’t go into the details.
“MR. LITTRELL: Judge, may we approach the bench just a minute.
“THE COURT: Yes.
“(WHEREUPON MR. LITTRELL AND MR. ROGERS APPROACHED THE BENCH AND AN OFF-THE-RECORD DISCUSSION WAS HAD AFTER WHICH THE FOLLOWING OCCURRED)
“BY MR. LITTRELL:
“Q. What was the nature of the threat, Mr. Speake?
“MR. ROGERS: Judge, we object on the basis of being hearsay, statements made *1066 outside the presence of the Defendant, and that it’s inflammatory and prejudicial.
“THE COURT: Overruled.
“MR. ROGERS: We take exceptions.
“A. Mr. Littrell, I do not specifically and independently recall the nature of the threat conveyed to me by Dean Polk on the 13th.
“Q. Okay. Then let’s go to the 15th, the conversation that you had with her; was her daughter present then?
“A. No, sir.
“MR. ROGERS: Judge, we at this time move to exclude all of the statements and questions by the District Attorney made on the 13th of October to Mr. Speake.
“MR. LITTRELL: Judge, I believe his answer was that he remembered that she had communicated to him information concerning threats by her son-in-law.
“THE COURT: Overruled.
“MR. ROGERS: We take exception.
“Q. Go to the 15th, please sir.
“A. All right, sir. On the morning of the 15th she came into my office alone. Her daughter was not—
“MR. ROGERS: Judge, we are going to object on the same basis, as hearsay, and statements made outside the presence of the Defendant, that it’s inflammatory and prejudicial, and it’s remote and irrelevant.
“THE COURT: All right. Overrule. You can just state the nature of what was said.
“MR. ROGERS: We take exception.
“A. She asked me to give her information or assistance where she could obtain immediate protection. In the context of the conversation on the 13th she said in substance, as I recall, that ‘he will kill us.’
“Q. To whom was she referring?
“A. To that Defendant.
“Q. All right.
“MR. LITTRELL: That’s all. Thank you.
“MR. ROGERS: I don’t have any questions Judge.”
Thereupon the witness was excused.
“Statements and declarations of a deceased are not competent evidence for or against an accused in a murder prosecution unless made in his presence, or unless they are admitted in evidence as part of the res gestae or constitute dying declarations. Kitchens v. State, 251 Ala. 344, 346, 37 So.2d 428 (1948); Holland v. State, 162 Ala. 5, 11, 50 So. 215 (1909); Hill v. State, 339 So.2d 1077, 1080 (Ala.Cr. App.), cert. denied, 339 So.2d 1082 (1976). See also Reaves v. State, 158 Ala. 5, 48 So. 373 (1909); Lakey v. State, 18 Ala. App. 442, 93 So. 51 (1922).” Hargrove v. State, Ala.Cr.App., 368 So.2d 335, 337 (1979).
The statements made by the deceased, as related by Mr. Speake, do not come within the scope of dying declarations or res ges-tae. They should not have been admitted in evidence. They were of an extraordinarily injurious nature. The court should not have permitted them to be introduced in evidence. The action of the trial court in this respect necessitates a reversal.
Appellant’s third insistence on a reversal is as to an admission in evidence, over the objection of defendant, of communications between defendant and his wife occurring about a week or two before the alleged crime. Many pages of the transcript are devoted to testimony of defendant’s wife as to physical violence exerted against her and as to his threats against her and the alleged victim of the homicide. Defendant’s objection was three-pronged. One prong was that the evidence was “too remote and abstract,” another that it involved a separate offense, and the third that it constituted “a privileged communication or transaction between husband and wife.” The court overruled defendant’s objection and gave him “a continuing objection to this line of questioning.” We think that grounds one and two of the objection are without merit. We also think that much of the particular testimony did not reveal confidential communications between spouses. However, we do not dis *1067 miss as unworthy of consideration any contention that it did in some, though not all, of the instances in which the witness said that defendant had directly or indirectly made a threat of violence against the mother of the witness. Even so, in the absence of any attempt by appellant to segregate the small amount of the testimony as to which it can be reasonably said that it constituted confidential communication between spouses from the large amount of testimony as to what defendant said to his wife that obviously was not intended as a confidential communication to her, we will not endeavor to do so.
“In determining whether the privilege is applicable in a given case, the proper inquiry is whether the communicating spouse intended the communication or act to be confidential. The privilege does not cover a communication or transaction between husband and wife which manifestly was not confidential or which must have been intended to be made public.” Gamble, McElroy’s Alabama Evidence § 103.01(4) (1977).
It could be claimed with some reason by appellant that by giving the defendant a continuing objection to questions asked the witness as to previous communications to her by her husband, defendant should not have been required to bring to the attention of the court a particular communication that would have constituted a confidential one. On the other hand, it could be said by the trial court that the continuing objection given defendant did not necessarily excuse the defendant from making a particular objection to some particular communication materially different from the norm in the statements by the defendant to his wife. In view of the necessity for a reversal on the ground stated above, we leave the third issue presented by appellant without any detailed consideration thereof, which would be necessary for a definite and correct determination thereof, but suggest that, if there is another trial, it be understood by all concerned that generally threats made by defendant against his wife would not constitute confidential communication between spouses but that, conceivably at least, statements that he made to his wife about his mother-in-law could constitute confidential communications.
Appellant’s fourth assertion of error is to the effect that the State failed to prove a prima facie case for the reasons stated by his attorney as follows:
“All they have shown is that he had an opportunity to have shot and killed Dean Polk, but they don’t have strong enough evidence to go to the jury, and I cite to you the case of Lang versus State, where they are talking about circumstantial evidence. And in that case, the Court held that the humane provisions of the Law, or a person charged with a felony, should not be convicted on circumstantial evidence unless it shows by full measure of the proof that the Defendant is guilty. Such proof is always insufficient unless it excludes to a moral certainty every other reasonable hypothesis but that of guilt of the accused. That is, the burden is on the State to show that Thomas Harris and he alone killed Dean Polk, and to exclude that any other person could have killed her...”
In his brief, appellant continues to rely upon Lang v. State, 252 Ala. 640, 42 So.2d 512 (1949) and also upon Parker v. State, 280 Ala. 685, 198 So.2d 261 (1967) and Johnson v. State, 287 Ala. 576, 253 So.2d 344 (1971).
In none of the cases relied upon by appellant was there any evidence tending to show that a person or persons other than the defendant was acting in concert with the defendant as a correlate to the principal-aider and abettor relationship. As to the instant case, appellant says in his brief:
“The evidence shows that the defendant could have committed the murder but Pearle Mae and Lewis Goode or some other person could have committed the act.”
The statement is correct. However, in such a situation, the principle set forth and relied upon by appellant in the cases cited by him does not apply. That principle had its genesis in Alabama in Ex parte Acree, 63 Ala. 234 (1879), in which Justice Stone said:
*1068 “No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires.”
In Pitman v. State, 148 Ala. 612, 42 So. 993 (1906), the court made it clear that the principle stated in Aeree had a limited field of application, that it should not be applied in a case in which there was evidence that a person or persons in addition to defendant were accomplices to the crime. In Pitman, supra, Mr. Justice Simpson noted that there had been a conflict of opinion on the subject, which was attributable to the failure to distinguish between cases in which the principle was applicable and those in which it was not applicable. The question has generally arisen in connection with the refusal of the trial court to give a written charge requested by defendant setting forth the proposition stated in Ex parte Acree as quoted above. In Pitman, at 148 Ala. 618, 42 So. 993, it is stated:
“In view of this conflict of opinion in our own decisions, we remark, first, that such a charge is not proper at all, except in those cases where there is evidence pointing to one or more persons other than the defendant; second, it is not proper if the nature of the offense is such that both may have been guilty; third, if allowed at all, a ‘theory’ hypothesized should be a reasonable theory. Coming to the case now before the court, it will be readily seen that the charge would be improper, because it does not negative the guilt of the defendant. The nature of the offense is such that two men might commit it, at different times, so that it might be, not only probable, but true, that some other person may have committed the same offense and yet the defendant have been guilty also.”
The fact that the evidence as a whole in a case against a single defendant is reasonably reconcilable with the theory that someone other than defendant committed the crime does not in and of itself serve to create a reasonable doubt as to defendant’s guilt in a case in which there is some substantial evidence that a person other than defendant was acting in concert with him in the commission of the crime. Scruggs v. State, Ala.Cr.App., 380 So.2d 308 (1979).
Appellant’s only other insistence on reversal is to the effect that the evidence does not show that the crime was committed in Lawrence County.
The evidence is almost conclusive to the effect that the victim was killed between about 1:00 A.M. and 2:00 A.M., October 28, and that the victim’s body was found within less than a mile from the home of Lewis Goode and his wife at Wheeler, in Lawrence County. The evidence also shows that appellant and the Goodes spent most of the preceding six hours either at the home of the Goodes or the home of the victim in Moulton, the county seat of Lawrence County, about twenty miles from Wheeler. At one time, they headed in an automobile toward Muscle Shoals in Colbert County, where appellant’s mother lived, and at another time toward Russellville in Franklin County, but turned before reaching either place and apparently did not get out of Lawrence County. In the entire testimony there is no reference to the adjoining county of Morgan or the adjoining county of Limestone, which apparently were the nearest counties to any of the places where the three had been or where the victim had been during the six hours prior to her death, but the distance by road to Limestone would have been much greater than the airline distance, by reason of the intervening Tennessee River. Officers of the Sheriff’s Office of Lawrence County, officers of the Police Department of Moulton, and of the Police Department of Hillsboro, in Lawrence County, participated in the investigation soon after the death of the victim. One of the larger diagrams of the area, which purports to cover all of the places of significance, was identified by the evidence as covering an area in Lawrence County. That the crime was committed in a county other than Lawrence is a bare possibility; that it was committed in Law *1069 rence County is shown by the circumstantial evidence with reasonable certainty. Although the exact spot where the victim was killed is not shown by direct evidence, the jury could properly conclude from the circumstantial evidence that she was killed in Lawrence County. Allen v. State, Ala.Cr. App., 374 So.2d 447 (1979); Grace v. State, Ala.Cr.App., 369 So.2d 318 (1979); Cumbo v. State, Ala.Cr.App., 368 So.2d 871, cert. denied, Ala., 368 So.2d 877 (1978).
For the error indicated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.