575 So.2d 43 (1990)
Ex parte Robert Gary COKER.
(Re Robert Gary Coker v. State).
89-1034.
Supreme Court of Alabama.
December 7, 1990.
Rehearing Granted January 11, 1991.
*44 C. Michael McInnish of McInnish & Bright, Montgomery, for petitioner.
Don Siegelman, Atty. Gen., and Rosa H. Davis and Joseph G.L. Marston III, Asst. Attys. Gen., for respondent.
David R. Boyd and W. Joseph McCorkle, Jr. of Balch & Bingham, Montgomery, for amicus curiae Alabama Ass'n of School Boards.
Kenneth Smith, Staff Atty., Montgomery, for amicus curiae Alabama League of Municipalities.
Olivia H. Jenkins, G. Keith Clark and James G. Stevens, Asst. Attys. Gen., for amicus curiae Alabama Dept. of Environmental Management.
Otis J. Goodwyn, Asst. Atty. Gen., for amicus curiae Alabama Dept. of Conservation and Natural Resources.
Richard N. Meadows, Gen. Counsel, and Jim R. Ippolito, Jr., Associate Counsel, Dept. of Educ., for amicus curiae Dr. Wayne Teague, State Superintendent of Educ.
Edward M. George, Div. of Legal and Personnel Services, Alabama Dept. of Postsecondary Educ., and Jeffery A. Foshee, Montgomery, for amicus curiae Chancellor Fred Gainous.
Richard G. Alexander, Mobile, for amicus curiae Mobile County Deputy Sheriffs Law Enforcement Ass'n.
William T. Stephens, Montgomery, for amici curiae Teachers' Retirement System of Alabama and Employees' Retirement System of Alabama.
M. Roland Nachman, Jr. and James A. Byram, Jr. of Balch & Bingham, Montgomery, for amicus curiae Alabama State Employees Ass'n.
James W. Webb of Webb, Crumpton, McGregor, Davis & Alley, Montgomery, for amicus curiae Ass'n of County Commissions of Alabama.
John G. Harrell of Bradley, Arant, Rose & White, Birmingham, and Arnold W. Umbach, Jr. of Umbach & Meadows, Opelika, for amicus curiae City of Auburn.
Joseph H. Johnson, Jr. and David W. Spurlock of Lange, Simpson, Robinson & Somerville, Birmingham, and George A. Moore of Johnston, Johnston & Moore, Huntsville, for amicus curiae Madison County Bd. of Educ.
ALMON, Justice.

Dec. 7, 1990
Robert Gary Coker was convicted and sentenced to prison for violating the Pharmacy Robbery Act, 1982 Ala. Acts, No. 82-434, codified at Ala.Code 1975, § 13A-8-50 through -52. This "act" originated as House Bill 362, so we shall refer to it as H.B. 362. Coker filed a petition for relief from conviction and sentence pursuant to Rule 20, Ala.R.Crim.P. (Temp.). In that petition, Coker alleged that the trial *45 court never had jurisdiction to convict him, because, he argued, H.B. 362 was pocket vetoed by the Governor when he failed to deposit it with the secretary of state within 10 days of the final adjournment of the legislature as provided for in Article V, Section 125, Constitution of Alabama 1901. The trial court denied relief and the Court of Criminal Appeals affirmed, 564 So.2d 105. We granted Coker's petition for the writ of certiorari because it presented two questions as to which Coker's arguments had probable merit: (1) whether the deposit of a bill with the secretary of state within the 10-day period is mandatory or merely directory; and (2) if the bill was not properly enacted into law, then whether the statutory codification of a bill that is not deposited within the 10-day period gives it the force and effect of law.
The record before us shows that H.B. 362 was presented to the Governor on April 26, 1982, the date of the adjournment of the 1982 Regular Session of the legislature; that the Governor approved the bill on May 4, 1982; and that the bill was received by the secretary of state on May 10, 1982.
Article V, § 125, Constitution of Alabama 1901, provides, in pertinent part:
"[B]ills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor at any time within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law."
Because the language of this provision is plain and unambiguous, we must apply the provision as written. Tate v. Teague, 431 So.2d 1222 (Ala.1983); Fuller v. Associates Commercial Corp., 389 So.2d 506 (Ala. 1980); McGee v. Borom, 341 So.2d 141 (Ala.1976).
Section 125 provides for a 10-day period in which bills can become law after the legislature adjourns. Specifically, it provides that, "within that time" the bill must be approved and deposited with the secretary of state. The Court of Criminal Appeals has applied § 125 to hold that other bills, which the Governor similarly failed to deposit with the secretary of state within 10 days after legislative adjournment, never became law:
"The use of the conjunctive `and' in the last phrase of the quoted provision signifies two conditions precedent to such bills becoming laws: approval by the Governor and depositing with the Secretary of State within that time (ten days). Conversely, if either condition is not met within the stated period, the bills will not become laws. We are not persuaded that the depositing with the Secretary of State is `directory' only, which somehow waives the ten-day time period. Unless otherwise clear from the language employed, all constitutional provisions should be regarded as mandatory so as to preclude any discretion with the executive, legislative, or judicial branches of government as to whether to obey or disregard them. Following the clear and plain language of the provision and resorting to the ordinary and usual meaning of the words employed, we hold the bills must have been deposited with the Secretary of State, after their approval, and within the ten-day period. Not having been so deposited with the Secretary of State, the bill did not become law. Instead, it became the object of a pocket veto. To hold any other way would be an unwarranted judicial encroachment on constitutional revision, a matter which is reserved exclusively to the legislature and the people."
State v. Eley, 423 So.2d 303, 305 (Ala.Cr. App.) (emphasis in original), cert. denied, 423 So.2d 305 (Ala.1982); State v. Miller, 426 So.2d 949 (Ala.Crim.App.1983).
For this Court to hold that deposit with the secretary of state is only directory would be an unwarranted alteration of the clear meaning of this constitutional provision. Therefore, we hold, as the Court of Criminal Appeals has held, that bills presented to the Governor within five days of the adjournment of the legislature must be both approved by the Governor and deposited with the secretary of state within 10 days of the adjournment in order to "become law."
*46 As an alternative argument, the State contends that, even if H.B. 362 was not deposited with the secretary of state within the time allowed by § 125, and, for that reason, did not become law, it nevertheless became law through its incorporation in the 1982 Cumulative Supplement to the Code, as part of the 1982 Replacement Volume 12. This incorporation, the State argues, occurred through Act No. 83-131, which provides in pertinent part:
"SECTION 1. The 1982 Cumulative Supplement to the Code of Alabama 1975 containing all general and permanent classified municipal laws of the state adopted by the legislature during the... 1982 Regular Session ..., as prepared by ... the Alabama Code Commissioner,... is hereby adopted and incorporated into the Code of Alabama 1975."
(Emphasis added.) It is clear that the incorporation act applies only to general and permanent laws. H.B. 362 never became a law and, thus, could not be the subject of statutory codification.
The State also cites Fuller v. Associates Commercial Corp., 389 So.2d 506 (Ala. 1980), for the proposition that infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code is adopted by the legislature. This principle has long been recognized in this state (see Bluthenthal & Bickert v. Trager & Co., 131 Ala. 639, 31 So. 622 (1902); Bales v. State, 63 Ala. 30 (1879); Dew v. Cunningham, 28 Ala. 466 (1856)). Whatever the scope of that principle, however, it does not reach so far as to alter the approval or disapproval power of the executive branch of our government. To extend this principle to the instant case would allow statutory codification to control over a pocket veto, thus overriding the pocket veto powers of the Governor. We cannot upset the balance and separation of powers among the independent branches of our government by allowing the legislature this power.
Based on the reasons set forth above, we hold that the Pharmacy Robbery Act was pocket vetoed when it was not deposited with the secretary of state within the 10-day period as mandated by § 125. Further, we hold that the Pharmacy Robbery Act did not become law through statutory codification. Coker's conviction and sentence are due to be set aside. The judgment of the Court of Criminal Appeals is, therefore, reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., dissents. See separate opinion at page 53.

ON APPLICATION FOR REHEARING
ALMON, Justice.

Jan. 11, 1991
A few observations are appropriate before we address the new issues raised on rehearing. When this case was originally briefed and orally argued, Assistant Attorney General Joseph G.L. Marston III did not provide the Court with the list of some 142 bills that are now alleged to have been pocket vetoed by the Governor in March 1982 or two other lists of hundreds of bills now alleged to have been pocket vetoed in 1969 and 1971. After the case was argued and submitted, Mr. Marston filed a motion to set aside submission and allow him to further brief the following issue: "Where a bill fails to become law because of procedural errors in the legislative process but the provisions of the bill are incorporated into a code which is subsequently enacted in accordance with the Constitution, do such provisions become law, like the other provisions of the code?" That issue, of course, was already before the Court on the original submission, so the motion was denied.
The motion to set aside submission did not list the 142 bills from the 1982 Regular Session or the other bills from 1969 and 1971, now appended to the State's rehearing brief. See Ala.Acts 1982, Acts No. *47 82-422 through -628;[1] Ala.Acts 1971, Acts No. 1977 through 2488; Ala.Acts 1969, Acts No. 828 through 1255.[2] After this Court's December 7, 1990, opinion in this case, Mr. Marston made statements to the press regarding the effect of our opinion on approximately 142 bills. We note that Mr. Marston represented the State in State v. Eley, 423 So.2d 303 (Ala.Crim.App.), cert. denied, 423 So.2d 305 (Ala.1982); and State v. Miller, 426 So.2d 949 (Ala.Crim.App. 1983), where the pocket veto issue was also presented.
On application for rehearing, the State and several amici curiae make various arguments against the Court's opinion in this case. They first renew the argument that, while the Governor's signature on an act within 10 days after adjournment is mandatory, the deposit of the act with the secretary of state is merely directory. While we consider the discussion in the original opinion adequate to resolve that question, we add that the construction of the deposit requirement as mandatory is both necessary to provide a fixed limit for determination of whether a bill has become law and justified from a consideration of the debates of the 1901 Constitutional Convention.
We quote again the pertinent language from § 125 of the Constitution of 1901, which, as we originally noted, is clear and unequivocal:
"[B]ills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law."
The secretary of state is the official custodian of "the original statutes and public records of the state," Ala.Code 1975, § 36-14-1(1). See also Ala. Const. 1901, Art. V, § 134, and Ala.Code 1975, §§ 36-14-1(9) and (10), -4, and -11 through -15. Section 125 of the Constitution requires that bills presented to the Governor within 5 days prior to legislative adjournment be deposited with the secretary of state within 10 days after adjournment. If the requirement of deposit within 10 days is directory only, how is the public, or anyone else, to obtain definitive notice of the law? If a person comes to the secretary of state's office on the 11th day after adjournment asking for a certain act and is told that it has not been deposited, does not the Constitution entitle that person to conclude that the bill did not become law? If we were to hold that the deposit is merely ministerial and therefore directory and to note that the Governor was only four days late in this instance, what deadline would exist for the creation of an official record that a bill has become law? These rhetorical questions demonstrate why the 10-day deposit requirement must be construed as mandatory.
Such a construction is also consistent with the concerns expressed by the delegates to the 1901 Constitutional Convention. The delegates discussed the 1875 Constitution as providing that bills presented to the Governor within five days of adjournment did not become law unless the Governor signed them before the adjournment of the legislature. See Const.1875, Art. V, § 13; Official Proceedings of the Constitutional Convention of 1901, pp. 619-28. Several delegates opposed the provision giving the Governor an additional 10 days to approve such bills, but an attempt to strike the new provision was defeated. The supporters of the provision argued that it would give the Governor time to calmly consider bills presented just before *48 the session ended and would not enlarge his veto power. The opponents argued that the provision enlarged the Governor's power over the legislature and for 10 days deprived the public of notice that a bill had become law. If we were to adopt the position that deposit with the secretary of state within 10 days is directory only, we would be exacerbating the very problems feared by the opponents of approval of a bill after adjournment of the legislature.
Thus, we must hold that the requirement of deposit with the secretary of state within 10 days after legislative adjournment is mandatory. Rather than hold that H.B. 362 was in fact pocket vetoed on March 6, 1982, however, we make our decision prospective from October 20, 1982, the date the Court of Criminal Appeals announced its decision in State v. Eley, supra.[3] We reserve the discussion of retroactive or prospective application for later in this opinion.
The State and the amici argue that, even if H.B. 362 and the other bills to which our attention is directed were pocket vetoed, the provisions of most of those bills became law by codification in acts passed subsequent to the 1975 codification. Specifically, the State argues that the provisions of H.B. 362 became law when, on February 22, 1983, the Governor approved a bill that the legislature had passed and that became Act No. 83-131. Although that issue is no longer directly presented because of our holding of prospective application of the Eley decision, we will address it because it is a principal argument by the State and several of the amici on this application for rehearing.
The Pharmacy Robbery Act was included as §§ 13A-8-50 through -52 of the 1982 Cumulative Supplement. The pertinent portion of Act No. 83-131 adopting that supplement is quoted in our original opinion. Can such an act to incorporate former enactments into the Code give the force of law to prior bills that were improperly enacted, or is its effect merely to systematize into the structure of the 1975 Code laws that have already been properly enacted?
Section 45 of the Constitution of 1901 reads, in pertinent part:
"Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes."
If the subject of Act No. 83-131 is the incorporation of laws validly enacted in 1982 into the 1975 Code, it has but one subject. If the subject of Act No. 83-131 is the enactment into law of 142 bills that were pocket vetoed in 1982, it clearly has more than one subject.
The question, then, is whether Act No. 83-131 is a bill "adopting a code, digest, or revision of statutes" and is thereby excepted from the single-subject requirement of § 45. In Gibson v. State, 214 Ala. 38, 106 So. 231 (1925), the Court, in an opinion by Justice Bouldin, rejected the argument that a comprehensive statute providing "a general system of legislation pertaining to agriculture and industries" came within this exception of § 45 of the Constitution simply because it was styled an "Agricultural Code." Justice Bouldin analyzed the exception as follows:
"In view of the cumulative constitutional provisions touching the titles of acts, amendments thereto, and the course of procedure through the Legislature, all intended to acquaint the members with the substance and effect of pending legislation and impose a responsibility upon each member in casting his vote thereon, we are impressed the exception of a bill `adopting' a Code was and is limited to the class known as such in the constitutional and legislative history of the state.
"A Code implies, first, a compilation of existing laws, their systematic arrangement into chapters or articles and sections, with subheads, table of contents, and index for ready reference; second, a revision such as to harmonize conflicts, supply omissions, and generally clarify and make complete the body of laws `designed to regulate completely, so far as a statute may, the subjects to which *49 they may relate.' Ex parte Thomas, 113 Ala. 1, 4, 21 So. 369; Hendon v. White, 52 Ala. 597; Central Georgia Ry. Co. v. State, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518.
"The subject-matter constituting the basis of a Code as defined in our Constitution is the existing statutory law. In keeping with this intent, our acts for the preparation of a Code usually direct the commissioner to make report of all changes made in course of revision, and to prepare separate bills for any distinctly new legislation which he may recommend. For obvious reasons, this is the proper course. Any new matter, however, embodied in the Code, is, by the act adopting the Code, enacted into law. Bluthenthal [ & Bickert] v. Trager [ & Co.], 131 Ala. 639, 31 So. 622; Bales v. State, 63 Ala. 30; Hoover v. State, 59 Ala. 57. All these considerations strongly argue that the exception of `bills adopting a Code' from the safeguards so carefully framed for the passage of laws should not be extended so as to afford a ready means of evasion of their salutary provision.
"Our conclusion is that a bill adopting a Code, within the exception to section 45, is one whose title in terms follows the language of the exception, at least in substance, and which deals with a compilation or body of laws theretofore prepared, and not first set out and enacted in the bill itself.
"A bill to `adopt' a Code directs the attention of the legislator elsewhere for the contents of the Code. A bill to enact into law the matter set forth therein must, by its title, direct the legislator's attention to the subject of the legislation in the manner declared by section 45. Any other rule would invite evasion of the Constitution by the expedient of naming the act a Code, or, if not so entitled, make its validity to depend upon whether it is such a compilation and revision of laws as to come within the legal definition of a Code. This would lead to still greater uncertainty in framing valid enactments, and greater difficulties in passing upon their validity. One important end to be aimed at in construing constitutional provisions is certainty."
214 Ala. at 43-44, 106 So. at 235.
In contrast to Act No. 83-131, the adoption of the Code of 1975 came about through a much more careful, thorough, and closely scrutinized process. Acts 1969, No. 1160,[4] authorized the appointment of a code commissioner to "revise, digest, and codify all the statutes of the State of a general and public nature," and to "prepare a systematic code of the whole body of the public statutes of the State." Cf. Const.1901, § 85:
"It shall be the duty of the legislature, at its first session after the ratification of this Constitution, and within every subsequent period of twelve years, to make provision by law for revising, digesting, and promulgating the public statutes of this state, of a general nature, both civil and criminal."
In the 1976 Regular Session, the legislature passed Senate Joint Resolution 124 (denominated Act No. 510 in the 1976 Acts), which appointed a special joint committee to study the nearly completed code manuscript, noted that the code commissioner intended to provide copies for each member of the legislature, and requested the Governor to call a special session for consideration of, and action on, the report of the joint committee and adoption of the new 1975 Code.
Act No. 20 of the 1977 Regular Session actually adopted the Code of 1975. Section one of that act reads in part:

*50 "That the manuscript as prepared by the Bobbs-Merrill Company and The Michie Company, jointly, as the Code Commissioner... as such manuscript has been revised, amended, and corrected as reported by the Joint Committee of the Senate and the House of Representatives... be and the same is hereby adopted and enacted as the Code of Alabama, which shall be known as the `CODE OF ALABAMA 1975,' and may be so cited."
Section two provided an effective date and provided further that "said Code shall govern completely, so far as a statute can, the subjects to which it relates." Section four, with certain exceptions (several stated therein plus those recited in § 1-1-10 of the Code), repealed "[a]ll statutes of a general and permanent nature not included in the CODE OF ALABAMA 1975." Section five added other exceptions to the repeal of existing laws. The Governor, by proclamation on October 1, 1977, designated October 31, 1977, as the effective date of the 1975 Code. Ala.Code 1975, vol. 1, p. vi.
This process mirrors the process by which the Codes of 1940, 1923, 1907, 1896, 1886, 1876, 1867, and 1852 were adopted. It is that process of adopting an entire Code, after notice, study, and revision by the legislature of the code commissioner's manuscript, that the constitution contemplates in creating an exception to the single-subject requirement of § 45. It is also that process that the Court had in mind when it stated that "[a]ll infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code adopted by the legislature." Fuller v. Associates Commercial Corp., 389 So.2d 506, 509 (Ala. 1980) (adoption of 1975 Code cured any single-subject violation in enactment of the Mini-Code, Ala. Acts 1971, No. 2052, codified at § 5-19-1 et seq.); Opinion of the Justices No. 63, 244 Ala. 384, 13 So.2d 762 (1943) (regardless of their original status as local laws or as general laws of local application, the laws codified in Title 62 of the 1940 Code were upon codification made local laws and could only be amended accordingly); State ex rel. Sossaman v. Stone, 235 Ala. 233, 178 So. 18 (1937) (defect in title of 1919 act cured by incorporation into 1923 Code); Brandon v. State, 233 Ala. 1, 173 So. 238 (1936) (1915 local act passed in violation of Const. § 106 was validated by incorporation into 1923 Code); Dillon v. Hamilton, 230 Ala. 310, 160 So. 708 (1935) (any § 106 defect in enactment of 1921 act was cured by enactment of 1923 Code); Smith v. State, 223 Ala. 346, 136 So. 270 (1931) (1927 act adopting code commissioner's manuscript of Agricultural Code validated commissioner's deletion of "knowingly" and thereby superseded original enactment);[5]Bluthenthal & Bickert v. Trager & Co., 131 Ala. 639, 31 So. 622 (1902) (commissioner's introduction of provisions of invalid 1897 act into 1896 Code, § 2158, was ineffective to change Code); Builders' & Painters' Supply Co. v. Lucas & Co., 119 Ala. 202, 24 So. 416 (1898) (bill passed at same session as 1896 Code and subsequently included therein by commissioner derived its validity only from original enactment); Bales v. State, 63 Ala. 30 (1880) (whether constitutionally prescribed legislative procedure was followed in original enactment was unimportant because of incorporation of statute's provisions into 1876 Code); Hoover v. State, 59 Ala. 57 (1878) (penal code of 1866 was validly enacted, and furthermore, its provisions were validated by incorporation into the Codes of 1867 and 1876); Dew v. Cunningham, 28 Ala. 466 (1856) (enactment of Code of 1852 not unconstitutional for failure to give entire code three readings; only the enacting bill was required to be read at length). See also State v. Golden, 531 So.2d 941 (Ala. *51 Crim.App.1988) (inclusion of 1915 act in every subsequent code, including the Code of 1975, cured any violation of Const. § 106 in original enactment).
Each of the above-cited cases involved the cure of defective enactment by adoption of a code "known as such in the constitutional and legislative history of the state," Gibson, supra, 214 Ala. at 43, 106 So. at 235. Hoover involved the 1866 Penal Code and Smith involved the 1927 Agricultural Code, but those partial codes were also adopted by the process of appointment of a code commissioner, review by the legislature of the code as a systematic revision of existing law, and enactment by the legislature of the manuscript as a new code governing the subjects included therein.
In contrast, the legislature has, by acts equivalent to Act No. 83-131, regularly "adopted and incorporated into the Code of Alabama 1975" the successive cumulative supplements. Acts 1978, No. 674; Act No. 79-37; Act No. 80-753; Act No. 81-653; Act No. 82-567;[6] Act No. 84-259; Act No. 85-45; Act No. 86-375; Act No. 87-805; Act No. 88-918; Act No. 89-525; Act No. 89-990. While there has been some revision, usually correction of grammatical or typographical errors, of the supplements in each of these acts, there is no indication that the manuscripts have undergone the systematic review by the legislature that is undertaken upon the adoption of a Code. There was no intent that each successive supplement "shall govern completely, so far as a statute can, the subjects to which it relates," as was stated in § 2 of Act No. 20 of the 1977 legislative session, the Act by which the legislature adopted the 1975 Code.
Thus, we cannot say that the successive acts adopting the annual supplements as part of the 1975 Code are excepted from the single-subject requirement of § 45 of the Constitution, because they do not come within that section's exception for "bills adopting a code, digest, or revision of statutes."
The foregoing discussion sets forth the holdings of this Court on the two issues regarding the Constitution of 1901, i.e., that § 125 mandatorily requires the Governor to approve and deposit with the secretary of state within 10 days after legislative adjournment bills presented to him within 5 days before such adjournment, and that § 45 does not include bills incorporating cumulative supplements into the Code within its exception for "bills adopting a code, digest, or revision of statutes." We now turn to the question of the prospective application of the former holding from the date the Court of Criminal Appeals first announced that rule in State v. Eley.
The determination of the retroactive or prospective application of a decision overruling a prior decision is a matter of judicial discretion that must be exercised on a case-by-case basis. City of Birmingham v. Blount County, 533 So.2d 534 (Ala. 1988); State v. Morrison Cafeterias Consol., Inc. of Delaware, 487 So.2d 898 (Ala. 1986). The same principle should apply in a case such as this announcing a new rule for determining the application of a constitutional principle in a case of first impression. In deciding whether to give retroactive application to a holding that declares an act void or unconstitutional, a court must consider matters of public policy. Land v. Bowyer, 437 So.2d 524 (Ala.1983); Stallworth v. Hicks, 434 So.2d 229 (Ala. 1983).
In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court discussed the history of retroactive and prospective operation of judicial decisions overturning prior rules of law or articulating new ones. The Court stated:
"Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective....
"While the cases discussed above deal with the invalidity of statutes or the effect of a decision overturning long-established *52 common-law rules, there seems to be no impedimentconstitutional or philosophical to the use of the same rule in the constitutional area where the exigencies of the situation require such an application....
"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."
381 U.S. at 628-29, 85 S.Ct. at 1737 (citations omitted).
Recently, the Supreme Court has held that new rules will not be announced or applied, with limited exceptions, in federal habeas corpus cases brought by state prisoners after their convictions have become final. See, e.g., Collins v. Youngblood, ___ U.S. ___, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); Butler v. McKellar, 494 U.S. ___, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Court has contemporaneously held, however, that
"When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions. See Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, [148], 77 L.Ed. 360 (1932) (`We think the federal constitution has no voice upon the subject [of whether a state court may decline to give its decisions retroactive effect]')."
American Trucking Associations, Inc. v. Smith, ___ U.S. ___, ___, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990) (brackets in original).
A useful test for retroactive application in criminal cases was articulated by the Supreme Court as follows:
"In deciding whether to apply newly adopted constitutional rulings retroactively, we have considered three criteria: (1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice."
Halliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 1499, 23 L.Ed.2d 16 (1969); Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).
Coker pleaded guilty on May 18, 1984, to the crime of pharmacy robbery, 1982 Ala. Acts No. 82-434, codified at Ala.Code 1975, § 13A-8-50 through -52, and was sentenced to a term of 10 years. He filed his Rule 20, Ala.R.Crim.P. (Temp.), petition for post-conviction relief on March 29, 1989.
To apply retroactively the rule that deposit within 10 days is mandatory would drastically upset the administration of justice and unjustifiably interfere with the extensive reliance placed on hundreds of laws for many years. Hundreds of laws, many of them not brought forward[7] into the 1975 Code or enacted since that time, would be considered pocket vetoed under a retroactive mandatory construction of the deposit requirement. Extensive reliance has been placed upon laws approved by the Governor within 10 days after adjournment but not deposited with the secretary of state within that time. The purposes of § 125 of the Constitution include preventing the Governor from abusing his pocket veto power and providing definitive notice of the enactment of laws. Although the deposit requirement was violated in the case of H.B. 362 and other bills, those violations appear to have been due to a construction of the 10-day deposit requirement as ministerial and directory. There was not, prior to Eley, any direct ruling on the mandatory or directory nature of the deposit requirement.
The purposes of the deposit requirement would not be served by invalidating laws that have been relied upon as law for many *53 years. Therefore, the holding that a bill presented to the Governor within 5 days before the end of a legislative session is vetoed under § 125 unless he both approves it and deposits it with the secretary of state within 10 days after the legislature adjourns, will be applied prospectively from the date that holding was first announced in State v. Eley. Any other holding could be disruptive of state, county, and municipal governments. We only regret that we were not apprised of this situation on our original consideration of this case.
The judgment of the Court of Criminal Appeals, affirming the denial of Coker's Rule 20 petition, is affirmed. We re-emphasize that the 10-day deposit requirement of § 125 of the Constitution is mandatory, so that, from the date of Eley, if a Governor failed or fails to make such a deposit with the secretary of state, any such bill was or will be pocket vetoed. A bill adopting a cumulative supplement cannot serve to enact the provisions of a pocket-vetoed bill; it can only serve to systematize validly enacted laws into the structure of the Code. To enact the provisions of such a vetoed bill, the legislature must follow the requirements of all applicable constitutional provisions, including § 45.
APPLICATION GRANTED; OPINION EXTENDED; AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., concurs in the result. See separate opinion at page 62.
HOUSTON, J., concurs in the result. See separate opinion at page 69.
MADDOX, Justice (dissenting from original decision of Dec. 7, 1990).
This Court, in reversing the judgment of the Court of Criminal Appeals, holds that the Pharmacy Robbery Act of 1982 is unconstitutional, and that the petitioner's conviction, based upon his plea of guilty to a charge laid under that Act, is due to be set aside in this post-conviction proceeding.
In reaching the conclusion it does, the majority follows State v. Eley, 423 So.2d 303 (Ala.Crim.App.), cert. denied, 423 So.2d 305 (Ala.1982) (Maddox and Faulkner, JJ., dissenting). When this Court denied certiorari review in Eley, I dissented because I thought that the Court should review Eley to determine its correctness. At that time, I thought the holding in Eley may have been incorrect, but I am now convinced, after reading and analyzing the debates of the delegates to the 1901 Constitutional Convention relating to the power of the Governor to pocket veto legislation, that the Governor did, in fact, pocket veto the Pharmacy Robbery Act of 1982, whether he intended to do so or not, by failing to "deposit" it with the Secretary of State within 10 days of the final adjournment of the Legislature, as specified in the Constitution.[8] *54
*55 Even though I am now convinced that Eley was correctly decided, I think that the majority, nevertheless, errs in refusing to follow the principle of law the majority itself admits has "long been recognized in this state" that "infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code is adopted by the legislature." I think that this principle should be applied in this case. I am convinced that the provisions of the Pharmacy Robbery Act of 1982 became a part of the Code of Alabama 1975 when a subsequent Legislature enacted into law House Bill No. 3, which was approved by the succeeding Governor, George C. Wallace, on February 22, 1983, at 3:40 p.m., and which became Act No. 83-131, Acts of Alabama 1983. Section 5 of that Act makes specific reference to the 1982 Cumulative Supplement, which was before the Legislature, because Section 5 of Act 83-131 directs that the "authenticated copy" of the supplement be filed with the Secretary of State.[9]
The majority, in attempting to justify its refusal to apply the principle of law that constitutional infirmities in previous legislation can be cured by incorporating the provisions of the legislation into a Code, states that "[w]hatever the scope of that principle ... it does not reach so far as to alter the approval or disapproval power of the executive branch of our government," and that "[t]o extend this principle to the instant case would allow statutory codification to control over a pocket veto, thus overriding the pocket veto powers of the Governor."
I cannot agree with the majority that a different principle of law should apply when the constitutional infirmity involves § 125 and the veto powers of the Governor, and when the infirmity involves another provision of the Constitution, such as the mode of legislative procedure prescribed in § 45 of the Constitution of 1901.
The principle of law that the majority believes to be inapplicable is set out in Bales v. State, 63 Ala. 30 (1879), a case in which Bales was charged, by indictment, with the murder of his wife. He moved to quash the indictment on the ground that it was void because it was returned by a grand jury convened during a special term that the State contended was authorized by the Code of 1876, §§ 653-3. Bales was convicted, and on appeal his counsel argued to this Court that the original enactment which authorized a judge to convene a special term failed to comply with the last clause of the second section of the fourth *56 article of the constitution of 1868.[10] In Bales, Chief Justice Brickell, writing for the Court, said:
"Whether the mode of legislative procedure, prescribed by the last clause of the second section of the fourth article of the constitution of 1868, was observed in the original enactment of this statute, is not a question of any importance in this cause. It was introduced into, and forms part of the present Code, which, in all its parts and provisions, was enacted in conformity to the constitution, and embodies all public statutes, of a general and permanent nature, of force in the State. Dew v. Cunningham, 28 Ala. 466 [65 Am.Dec. 362]; Hoover v. The State, 59 Ala. 57. It may embrace statutes not originally enacted in the forms prescribed by the constitution; and if that be true, they are valid, not from the day of their original enactment, but from the day the Code became operative."
Bales, at 34.
Based upon this succinct statement of the law in Bales, which has been strictly followed in several cases, including Fuller v. Associates Commercial Corp., 389 So.2d 506 (Ala.1980), Bush v. Greer, 235 Ala. 56, 177 So. 341 (1937), Dillon v. Hamilton, 230 Ala. 310, 160 So. 708 (1935), Gibson v. State, 214 Ala. 38, 106 So. 231 (1925), and State v. Towery, 143 Ala. 48, 39 So. 309 (1905), I am of the opinion that a succeeding Legislature, by a separate bill, could incorporate the language of the Pharmacy Robbery Act of 1982 in the Code of Alabama, by including its provisions, along with the provisions of other statutes, in an "authenticated copy" of a Cumulative Supplement of the Code of Alabama prepared by the Code Commissioner, and adopt it as a part of the Code of Alabama, and that another Governor could approve that Act which incorporated into the Code of Alabama all of the provisions which were contained in the "authenticated copy" of a Cumulative Supplement, which is exactly what was done here.
Unquestionably, The Pharmacy Robbery Act of 1982 was included as a part of the Code of Alabama when the Legislature enacted House Bill 3, which the Governor approved on February 22, 1983, at 3:40 p.m. See, Act No. 83-131 Acts of Alabama 1983, pp. 137-41, which reads, as follows:
"Section I. The 1982 Cumulative Supplement to the Code of Alabama 1975 containing all general and permanent classified municipal laws of the State adopted by the legislature during the 1979 and 1980 Sessions and the 1981 Regular Session and all general and permanent laws, including the classified municipal laws, of the State adopted by the legislature during the 1981 First, Second and Third Special Sessions, the 1982 Regular Session and the 1982 First Special Session, as prepared by the Bobbs-Merrill Company and The Michie Company, jointly, as the Alabama Code Commissioner, which said 1982 Cumulative Supplement is identified and authenticated by the Great Seal of the State of Alabama placed upon the front and back covers of each of the Volumes 3 through 22 thereof, be and the same is hereby adopted and incorporated into the Code of Alabama 1975 as adopted by Act No. 20, H. 100, of the 1977 (Acts of 1977, p. 28)....
"....
"Section 5. Upon passage and approval of this act, the duly authenticated 1982 Cumulative Supplement, as corrected, the duly authenticated Probate Code and the duly authenticated part of the 1982 Interim Supplement shall each be transmitted to the Secretary of State, who shall file said documents in that office. Said documents shall not be removed from the office of the Secretary *57 of State, but the Secretary of State, upon request, under proper certificate and seal of that office, shall certify any part or parts thereof upon payment of the fee specified by law for similar service." (Emphasis added.)
If there were provisions in the "duly authenticated 1982 Cumulative Supplement, as corrected," that the succeeding Legislature did not wish to approve, it could have amended those provisions out. Furthermore, if the succeeding Governor did not want to approve every provision contained in Cumulative Supplement, including the provisions of the Pharmacy Robbery Act, which were included in "the duly authenticated 1982 Cumulative Supplement," he could either have vetoed House Bill 3, or sent an executive amendment to the Legislature.
I believe the law to be that if an act, such as Act No. 83-131, incorporates provisions contained in a Cumulative Supplement into the Code of Alabama, and if that act itself contains no constitutional infirmity, then every provision contained in a "duly authenticated" Cumulative Supplement, directed by the Legislature, in the legislation itself, to be filed with the Secretary of State, becomes a part of the Code of Alabama when the Governor approves the bill of incorporation, or when the bill otherwise becomes a law.
From a reading of Act No. 83-131, I find it clear that what is now contained in Ala. Code 1975, §§ 13A-8-50 through 13A-8-52, was included within "said 1982 Cumulative Supplement [which was] identified and authenticated by the Great Seal of the State of Alabama placed upon the front and back covers of each of the Volumes 3 through 22 thereof," and that the adoption by the Legislature of House Bill 3, and its subsequent approval by the Governor on February 22, 1983, at 3:40 p.m. made the provisions of §§ 13A-8-50 through 13A-8-52 (Act No. 83-131, Acts of Alabama 1983, pp. 137-41) effective from and after that date and time.
I think the principle that should be applied in this case and in every case with like facts is that a code that purports to embrace all public statutes, of a general and public nature "may embrace statutes not originally enacted in the forms prescribed by the constitution." Bales, at 34. In such instances the statutes are valid, "not from the day of their original enactment, but from the day the Code became operative." Bales, at 34. That principle is one which has been part of our jurisprudence for many years; it should be applied in this case. Because it is not, I must respectfully disagree with the holding by the Court in this instance. Although I do agree that Act No. 82-434 (the Pharmacy Robbery Act of 1982), did not become a law because of the failure of the Governor to deposit it with the Secretary of State within ten days, I am convinced, as I have shown hereinabove, that the provisions of the Pharmacy Robbery Act became effective when the Governor approved House Bill 3, on February 22, 1983, at 3:40 p.m. (Act No. 83-131, Acts of Alabama, 1982, pp. 137-141). The "duly authenticated 1982 Cumulative Supplement," which contains the Pharmacy Robbery Act, as required by Section 5 of that act, is on file with the Secretary of State. See Appendix A.
*58
 APPENDIX A
I, Willis V. Bell, Legislative Reference Service,
Reporter for Code Revision, certify that this is a
true and correct copy of the 1982 Cumulative
Supplement to Title 13A, Criminal Code, Code of
Alabama 1975, consisting of pages 3 through 109.
 TITLE 13A.
 CRIMINAL CODE.
 Code commissioner's note.The listing below of chapters of Title 13A is an inclusive listing
of all chapters and sections of the Criminal Code, as amended, and does not reflect the contents
of this supplemental pamphlet alone.
 Cited in Napier v. State, 357 So. 2d 1011
(Ala. 1978); Harris v. State, 395 So. 2d 1063
(Ala. Crim. App. 1980); Crumpton v. State, 402
So. 2d 1081 (Ala. Crim. App. 1981); Perry v.
State, 407 So. 2d 183 (Ala. Crim. App. 1981);
Smith v. State, 409 So. 2d 927 (Ala. Crim. App.
1981); Motley v. State, 409 So. 2d 945 (Ala.
Crim. App. 1981).
Chap. 1. General Provisions, §§ 13A-1-1 through 13A-1-11.
 2. Principles of Criminal Liability, §§ 13A-2-1 through 13A-2-26.
 3. Defenses, §§ 13A-3-1 through 13A-3-31.
 4. Inchoate Crimes, §§ 13A-4-1 through 13A-4-5.
 5. Punishments and Sentences, §§ 13A-5-1 through 13A-5-59.
 6. Offenses Involving Danger to the Person, §§ 13A-6-1 through
 13A-6-70.
 7. Offenses Involving Damage to and Intrusion upon Property,
 §§ 13A-7-1 through 13A-7-61.
 8. Offenses Involving Theft, §§ 13A-8-1 through 13A-8-86.
 9. Forgery and Fraudulent Practices, §§ 13A-9-1 through 13A-9-52.
 10. Offenses Against Public Administration, §§ 13A-10-1 through
 13A-10-131.
 11. Offenses Against Public Order and Safety, §§ 13A-11-1 through
 13A-11-224.
 12. Offenses Against Public Health and Morals, §§ 13A-12-1 through
 13A-12-198.
 13. Offenses Against the Family, §§ 13A-13-1 through 13A-13-7.
 14. Miscellaneous Offenses, §§ 13A-14-1 through 13A-14-5.
 CHAPTER 1.
 GENERAL PROVISIONS.
Sec.
13A-1-2. Definitions.
13A-1-5. Repealed.
13A-1-8. Procedural matters; civil liabilities
 not affected by title; prosecution
 when more than one offense.
13A-1-11. Effective date.
§ 13A-1-2. Definitions.
 Unless different meanings are expressly specified in subsequent provisions
of this title, the following terms have the following meanings:
 (1) OFFENSE. Conduct for which a sentence to a term of imprisonment, or
the death penalty, or to a fine is provided by any law of this state or by any
law, local law or ordinance of a political subdivision of this state.
*59
§ 13A-8-43 CRIMINAL CODE
 Cited in Rudolph v. State, 398 So. 2d 386
(Ala. Crim. App. 1981); Davis v. State, 401 So.
2d 218 (Ala. Crim. App. 1981); Matthews v.
State, 401 So. 2d 241 (Ala. Crim. App. 1981);
Chunn v. State, 402 So. 2d 1139 (Ala. Crim.
App. 1981); Johnson v. State, 405 So. 2d 149
(Ala. Crim. App. 1981); Johnson v. State, 406
So. 2d 451 (Ala. Crim. App. 1981); Andrewe v.
State, 406 So. 2d 1041 (Ala. Crim. App. 1981);
Carroll v. State, 407 So. 2d 177 (Ala. 1981);
Conner v. State, 407 So. 2d 862 (Ala. Crim. App.
1981); Young v. State, 408 So. 2d 199 (Ala.
Crim. App. 1981); Lowe v. State, 408 So. 2d 201
(Ala. Crim. App. 1981); Pruett v. State, 408 So.
2d 202 (Ala. Crim. App. 1981).
 Collateral references.  Pocket or clasp
knife as deadly or dangerous weapon for
purposes of statute aggravating offenses such
as assault, robbery, or homicide. 100 ALR3d
287.
§ 13A-8-43. Robbery in the third degree.
 Where prima facie case of robbery in the
first degree and question of defendant's
guilt was properly submitted to the jury, see
Thatch v. State, 397 So. 2d 246 (Ala. Crim.
App.), cert. denied, 397 So. 2d 253 (Ala. 1987).
 Where the state presents sufficient circumstantial
evidence to establish a prima facie case
of both murder and first-degree robbery, the
trial court properly may submit the facts to the
jury for its consideration. McCloud v. State, 401
So. 2d 314 (Ala. Crim. App. 1981).
 Cited in Matthews v. State, 401 So. 2d 241
(Ala. Crim. App. 1981); Hurst v. State, 402 So.
2d 1124 (Ala. Crim. App. 1981).
 Collateral references.  Use of force or
intimidation in retaining property or in
attempting to escape, rather than in taking
property, as element of robbery. 93 ALR3d 643.
§ 13A-8-44. Claim of right not defense in robbery prosecution.
 Importance of naming owner of property.
 This section suggests the possibility
that under the now statutory law of Alabama,
as distinguished from the formerly applied
common law, it is not as important that an
indictment name the owner of the property
involved. Johnson v. State, 406 So. 2d 451 (Ala.
Crim. App. 1981).
 Collateral references.  Coercion,
compulsion, or duress as defense to charge of
robbery, larceny, or related crime. 1 ALR4th
481.
 ARTICLE 2A.
 PHARMACY ROBBERY.
 Effective date.  The act which added this
article became effective July 1, 1982.
§ 13A-8-50. Short title.
 This article shall be known and cited as "The Pharmacy Robbery Act of
1982." (Acts 1982, No. 82-434, § 1.)
§ 13A-8-51. Definitions.
 When used in this article, the following words and phrases shall have the
following meanings, respectively, unless the context clearly indicates
otherwise:
 (1) PHARMACY. Any building, warehouse, physician's office, hospital, pharmaceutical
house or other structure used in whole or in part for the sale,
storage and/or dispensing of any controlled substance as defined in section
20-2-2 as amended.
I, Willis V. Bell,
Legislative Reference
Service, Reporter for
Code Revision, certify
that this is a true and
correct copy of Sections
13A-8-50 through 13A-8-52
as they appear in the
1982 Cumulative Supplement
to Title 13A, Criminal
Code, Code of Alabama 1975,
pages 62 and 63.
Done this 13th day
of November, 1990.
*60
§ 13A-8-52 FORGERY AND FRAUDULENT PRACTICES
 (2) PHARMACY ROBBERY. A person commits the offense of "pharmacy
robbery" under this article if in the course of committing a theft of any
controlled substance as defined in section 20-2-2 such person violetes section
13A-8-41. (Acts 1982, No. 82-434, § 2.)
§ 13A-8-85. Penalty for violation of article.
 (a) Upon conviction of the criminal offense of "pharmacy robbery" as defined
in section 13A-8-51(2), the offender shall be imprisoned at hard labor for not
less than 10 years nor more than 99 years and shall be ineligible for consideration
for parole, probation or suspension of sentence.
 (b) On a second or subsequent conviction under this article, the offender
shall be imprisoned for the remainder of his natural life and shall be ineligible
for consideration for parole, probation or suspension of sentence. (Acts 1982,
No. 82-434, § 3.)
 ARTICLE 4.
 COPYING AND SALE OF RECORDED DEVICES.
§ 13A-8-86. Penalty for improper sale or manufacture of recorded
 material.
 Cross references.  As to construction and
punishment of offenses, see § 13A-1-7. As to
punishments and sentences generally, see
§ 13A-5-1. As to sentences of imprisonment for
felonies, misdemeanors, and violations generally,
see §§ 13A-5-6 and 13A-5-7. As to fines
for felonies, misdemeanors, and violations generally,
see §§ 13A-5-11 and 13A-5-12.
 CHAPTER 9.
 FORGERY AND FRAUDULENT PRACTICES.
 Article 1.
 Forgery and Related Offenses.
Sec.
13A-9-3. Forgery in the second degree.
13A-9-13. Repealed.
13A-9-13.1. Negotiating worthless negotiable
 instrument  Generally.
13A-9-13.2. Same  Notice of refusal of
 Payment upon instrument.
13A-9-13.3. Same  Prima facie evidence of
 identity.
13A-9-14. Illegal possession of or fraudulent
 use of credit card or debit card.
 Article 2.
 Business Frauds.
Sec.
13A-9-43. Bait advertising.
13A-9-48. Fraud in insolvency.
13A-9-49. Issuing false financial statement.
13A-9-50. Receiving deposits in falling financial
 institution.
13A-9-52. Sale and delivery of coal mixed
 with other substances or materials
 or with different quality of coal.
I, Willis V. Bell,
Legislative Reference
Service, Reporter for
Code Revision, certify
that this is a true and
correct copy of Sections
13A-8-50 through 13A-8-52
as they appear in the
1982 Cumulative Supplement
to Title 13A, Criminal
Code, Code of Alabama 1975,
pages 62 and 63.
Done this 13th day
of November, 1990.
*61
I Willis V. Bell, Legislative Reference Service,
Reporter for Code Revision, certify that this is a
true and correct copy of the 1982 Cumulative
Supplement to Title 13A, Criminal Code, Code of
Alabama 1975, consisting of pages 3 through 109
 TABLES
Act No. 607 Title 13A
 Section Section
5050 13A-10-130
5055 13A-10-131
5501 13A-11-1
5505 13A-11-2
5510 13A-11-3
5511 13A-11-4
5515 13A-11-5
5520 13A-11-6
5525 13A-11-7
5530 13A-11-8
5540 13A-11-9
5545 13A-11-10
5550 13A-11-11
5555 13A-11-12
5560 13A-11-13
5565 13A-11-14
5601 13A-11-30
5605 13A-11-31
5610 13A-11-32
5615 13A-11-33
5620 13A-11-34
5625 13A-11-35
5630 13A-11-36
5635 13A-11-37
5801 13A-11-220
5805 13A-11-221
5810 13A-11-222
5815 13A-11-223
5825 13A-11-100
6101 13A-12-20
6105 13A-12-21
6106 13A-12-22
6110 13A-12-23
6115 13A-12-24
6116 13A-12-25
6120 13A-12-26
6125 13A-12-27
6130 13A-12-28
6135 13A-12-29
6140 13A-12-30
6145 13A-12-31
6220 13A-12-110
6221 13A-12-111
6222 13A-12-112
6223 13A-12-113
6301 Repealed
6305 Repealed
6310 Repealed
6320 Repealed
6322 Repealed
6325 13A-12-130
7001 13A-13-1
7005 13A-13-2
7010 13A-13-3
7025 13A-13-4
7030 13A-13-5
7035 13A-13-6
9901 Table I
9902 Omitted
9905 13A-1-10
9910 13A-1-11
9915 Omitted
Note:  Acts 1978, No. 770 amended Acts 1977, No. 607 by amending the following sections of
the Criminal Code: 13A-1-2, 13A-1-11, 13A-5-7, 13A-7-6, 13A-8-1, 13A-8-3 through 13A-8-5,
13A-8-8 through 13A-8-10.3, 13A-8-22, 13A-9-14, 13A-9-43, 13A-10-30, 13A-10-33, 13A-10-61,
13A-11-4, 13A-11-8.
Acts 1979, No. 125, amended Acts 1977, No. 607, by amending sections 13A-1-11 of the Criminal
Code.
Acts 1979, No. 471, amended Acts 1977, No. 607, by repealing sections 13A-1-5 and 13A-10-81
of the Criminal Code and amending the following sections: 13A-1-8, 13A-3-22, 13A-5-9, 13A-5-12,
13A-6-62, 13A-6-64, 13A-7-5 through 13A-7-7, 13A-8-4, 13A-8-10, 13A-8-18, 13A-8-19, 13A-9-3,
13A-10-9, 13A-10-31, 13A-10-43 through 13A-10-45, 13A-10-81, 13A-10-121, 13A-10-122,
13A-11-8, 13A-11-141, 13A-12-22 through 13A-12-24.
Acts 1979, No. 559, amended Acts 1977, No. 607, by amending sections 13A-3-23 and 13A-3-27
of the Criminal Code.
Acts 1979, No. 664, amended Acts 1977, No. 607, by repealing sections 13A-3-29 of the Criminal
Code and amending the following sections: 13A-3-30, 13A-3-31, 13A-5-9, 13A-6-4, 13A-8-11,
13A-8-12,13A-8-16, 13A-9-14, 13A-9-48 through 13A-9-50, 13A-10-3, 13A-10-8.
*62 MADDOX, Justice (concurring in the result of opinion on rehearing, Jan. 11, 1991).
While I concur in the result reached on rehearing to affirm the conviction of the petitioner, and to apply this decision only prospectively from the date of State v. Eley, 423 So.2d 303 (Ala.Crim.App.); cert. denied, 423 So.2d 305 (Ala.1982) (Maddox and Faulkner, JJ., dissenting), I file this opinion to state why I think the petitioner's conviction should be affirmed and why I now believe, contrary to what I believed on original deliverance,[11] that the provision of Article V, § 125, Constitution of Alabama 1901, which states that the Governor should deposit a bill he has approved with the secretary of state within the 10-day period, is directory and not mandatory.
I also concur in the result that upholds the constitutionality of the Pharmacy Robbery Act, Ala.Code 1975, §§ 13A-8-50 through -52, but my reasons for believing that the Act under which the petitioner was convicted was valid differ some from those expressed in the majority opinion.
My views on the two legal questions presented are based upon a consideration of the State's original brief, the oral arguments, the State's rehearing brief, several briefs filed by amicus curiae,[12] and extensive independent legal research on my part. The views I now express are gathered, in part, from the debates of the Constitutional Convention, from which I quoted substantially in my dissent on original deliverance, and by construing § 125 in pari materia with Article V, § 134, Constitution of Alabama 1901, which grants to the secretary of state the power, and indeed the duty, to authenticate all official acts of the Governor, except "laws, resolutions, appointments to office and administrative orders." (Emphasis added.)
The reasons for my special concurrence in the result may be summarized, as follows:
(1) I am now of the opinion, based upon extensive research and upon principles of constitutional construction, that the requirement that the Governor deposit with the secretary of state a bill he has timely "approved" is directory and not mandatory.
(2) The majority opinion, although upholding the validity of the Pharmacy Robbery Act, which was included in the code commissioner's manuscript referred to in Act No. 83-131, discusses the requirements of § 45 of the constitution and seems to state that Act No. 83-131 was not a bill "adopting a code, digest, or revision of statutes," and, therefore, did not come within the exception to the "one subject" requirement of § 45. While I agree in principle with the majority's holding that a legislature cannot circumvent the "single subject" requirement of § 45 by merely designating a bill as a bill to adopt a code, digest, or revision of statutes, I believe that the law in Alabama is that the legislature can, by statute, adopt a manuscript that is prepared in accordance with the legislature's direction and thereby adopt the manuscript and make it a part of the Code. In this case, I continue to believe, as I did on original deliverance, that, even assuming that the Pharmacy Robbery Act was invalid because of the failure of the *63 Governor to deposit it timely with the secretary of state, it was validated when it was included in the Code of Alabama by Act No. 83-131; not from the day of its original enactment, but from the day the supplement to the Code became operative.
My separate views on the legal issues presented will be expressed in two parts. Part I will contain the reasons for my opinion that the Governor did not pocket veto the Pharmacy Robbery Act when he failed to deposit it within the 10-day period. Part II will discuss why I think the legislature can adopt an act such as Act No. 83-131 without violating the "one subject" requirement of § 45.

I
Section 125 of the constitution provides, in pertinent part, as follows:
"Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor; if he approve, he shall sign it; .... bills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor at any time within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law."
In determining the intent of the framers of § 125, specifically regarding the necessity for the Governor to deposit a bill he has "approved" with the secretary of state within the 10-day period, I have applied these general rules of constitutional construction:
(1) "In construing the Constitution, the leading purpose would be to ascertain and effectuate the intent and object originally intended to be accomplished." Alexander v. State ex rel. Carver, 274 Ala. 441, 446, 150 So.2d 204, 208 (1963).
(2) "Constitutions usually deal with larger topics and are couched in broader phrase than legislative acts; hence their just interpretation is not always reached by the application of similar methods," and "`[a] Constitution is not to receive a technical construction, like a common law instrument, or statute.'" Realty Investment Co. v. City of Mobile, 181 Ala. 184, 187, 61 So. 248, 249 (1913), quoting Dorman v. State, 34 Ala. 216, 235 (1859).
(3) Every part, even every word, of the constitution must be given effect where possible, and the constitution must be read and interpreted, in the light of the laws and systems existing at its formation, which are not destroyed, but preserved, so far as not repugnant to, or inconsistent with, its provisions. Bouchelle v. State Highway Commission, 211 Ala. 474, 100 So. 884 (1924).
(4) If a statute or constitutional provision is susceptible to two constructions, one of which is workable and fair and the other unworkable and unjust, the court will assume that the legislature or the people, respectively, intended that which is workable and fair. Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30 (1972).
Applying these general principles of constitutional construction to the facts of this case, I now agree with the State and amici curiae that the "deposit" provision of § 125 is merely directory. On this point, I concur in the separate views expressed by Justice Houston in his concurrence in the result in this case concerning the separation of powers as those powers relate to the veto power of the Governor. It is my opinion, after much reflection, that the intent of the framers in stating in § 125 that the approved bill must be "deposited" with the secretary of state was directory and was to allow the secretary of state to "register" the official act of the Governor in approving the bill, to give the bill an act number, and to cause it to be published, as provided for by law. Ala. Const.1901, Art. V, § 134; Ala.Code 1975, § 36-14-1(1), (9) and (10), -4 and -11 through -15.
I am of the opinion that the requirement in § 134 that the secretary of state "keep a register of the official acts of the Governor" makes reference to the approval by the Governor of a bill, not to his deposit of *64 the bill.[13] Based upon the fact that the secretary of state has no authority to "authenticate" the act of the Governor in approving a bill, and based upon the fact that various secretaries of state have printed and distributed bills that were, in fact, "approved" by the Governor but not "deposited" within the 10-day period, I am of the opinion that the "deposit" provision in § 125 was for the purpose of giving direction to the Governor to file the approved law with the secretary of state, so that the secretary of state could perform the duties imposed on him or her by the constitution and laws of the State of Alabama and thereby give notice of the bills that the Governor approved during the 10-day period. After reading and rereading the debates of the convention on the pocket veto provision and after studying the constitutional provisions relating to the powers and duties of the Governor and the secretary of state regarding the execution of the duties of their separate offices, I conclude that the 10-day provision is mandatory only with regard to the Governor's approval of a bill, and that the purpose of the 10-day period was to grant to the Governor an additional 10 days "to pass his own cool and deliberate judgment" upon the bills presented to him within five days of the adjournment of the Legislature sine die.[14] Official Proceedings of the Constitutional Convention of the State of Alabama, May 21, 1901, to September 3, 1901, Vol. 1, p. 634. The statements of Mr. James E. Cobb, of Macon County, during the debates on the pocket veto power emphasize the fundamental purpose of the provision:
"It occurs to me that this provision reported by the Committee on the Executive Department is an exceedingly wise *65 one. The Governor of the State of Alabama, is, in a very important sense, a part of its legislative department.... The supposition and intention is that the acts of the General Assembly shall be carefully scrutinized by the Chief Executive in order to prevent hasty improvident legislation. Now, any provision which increases his power in this regard and gives him a better opportunity so to scrutinize the actions of the General Assembly is a wide departure from heretofore existing precedents.... If we can find a better way we should pursue it, and not hamper ourselves and tie ourselves to the old way because it is the old way.... And this, for the reason that where bills go to him within a certain time of the adjournment, he can easily prevent these bills from becoming laws, by simply refusing his assent. The Legislature adjourns and the laws are not enacted. He may often times find himself in this situation. Here is a bill about which he has a doubt.... He is willing to trust the Attorney-General or any other friend, but he wants to pass his own cool and deliberate judgment upon it. He has not the time to do it, and, therefore, out of abundant caution, he refuses to let it become a law at all. Give him this ten days and he will have this opportunity to deliberate, to consider, and to examine and thus avoid the difficulty of refusing to permit a good measure to become a law by reason of the lack of opportunity afforded him to examine it. What is the harm, I repeat, and as has been repeated heretofore? If he approves the bill, it is a law; if he refuses to approve it, it is not a law."
Official Proceedings, pp. 623-24. (Emphasis added.)
It is interesting to read the words Mr. Cobb used: "If [the Governor] approves the bill, it is a law; if he refuses to approve it, it is not a law." Id. (Emphasis added.) No-where in the debates did Cobb mention the condition precedent of "deposit" with the secretary of state. The lack of emphasis on the requirement that the "law" be deposited with the secretary of state shows, in my opinion, that the purpose of having the law filed was so that it could be published as an act of Alabama. The word "deposit" is significant, of course, because the secretary of state, under the provisions of § 134 of the constitution is mandated to "keep a register of the official acts of the governor," and clearly the Governor's approval of a bill is an "official act." Section 134 provides:
"The secretary of state shall be the custodian of the great seal of the state, and shall authenticate therewith all official acts of the governor, except his approval of laws, resolutions, appointments to office, and administrative orders. He shall keep a register of the official acts of the governor, and when necessary, shall attest them, and lay copies of same together with copies of all papers relative thereto, before either house of the legislature, when required to do so and shall perform such other duties as may be prescribed by law." (Emphasis added.)
As I read the provisions of § 134, the secretary of state has no authority to authenticate the Governor's approval of a bill; therefore, the Governor's approval of a bill is self-authenticating, and the only power of the secretary of state, under § 134, is to keep a register and enter the date of the Governor's approval of the act, which date would be shown when the act is published and distributed.
Section 134 was adopted almost verbatim from the earlier constitution,[15] and I can assume that the framers were familiar with the fact that the secretary of state had no authority to authenticate the Governor's approval of legislation.[16] In none of *66 the prior constitutional provisions have I found any indication that the framers intended for the secretary of state to exercise anything other than a ministerial role in recording the official acts of the Governor in the approval of legislation. Consequently, I am of the opinion that the reference in § 134 to the "register of the official acts of the governor," as it relates to bills of the legislature, can only refer to the Governor's approval of those bills, not to the Governor's actual deposit of the acts in the office of the secretary of state.[17]
When I construe § 125 in pari materia with § 134, I am of the opinionconsistent with the statement of Mr. Cobb during the debatesthat the Pharmacy Robbery Act became a law the minute the Governor approved it on May 4, 1982, at 3:00 p.m., which date and time affirmatively appear on the face of the original Pharmacy Robbery Act, which is published in the bound volume of Acts of Alabama 1982. Act No. 82-434, Acts of Alabama 1982, Vol. II, p. 684. In the front of the volume in which the Pharmacy Robbery Act is included this certification:
"The undersigned, as Secretary of State of the State of Alabama, does hereby certify that this book contains bills and joint resolutions enacted at the 1982 Regular Session of the Legislature of Alabama and is the official publication of such acts.
 "Don Siegelman
 "Secretary of State"[18]
Acts of Alabama 1982, Vol. II.
It would appear to me that everyone should be able to rely upon the facts stated in an official document certified by the custodian of the great seal, and that citizens who are governed by the laws contained in those volumes should be able to assume that those laws are, in fact, the laws enacted by the legislature and approved by the Governor, as certified. No one should be expected to check the records of the office of the secretary of state to see when the bill approved by the Governor was actually deposited in that office to determine its validity.
I have not gone to the official records to determine how many times a Governor has approved bills, as authorized under § 125, and yet has failed to deposit those bills with the secretary of state within the 10-day period, but the briefs filed by the parties indicate that it has occurred on many, many occasions,[19] and I applaud this Court for recognizing the fact that the laws as *67 published have been relied upon and should be upheld.
On original deliverance, I was not aware of the great number of acts that were not deposited with the secretary of state by the Governor within the 10-day period. The fact that no challenge had been made to any of these acts until the challenge was made in Eley convinces me even more that the "approval" date is the only critical date for enactment purposes. Now that I know, on application for rehearing, the reality of the effect of the holding in this case, I am convinced that the framers intended that the only critical date was for the Governor to act within the 10-day period. This view accords with the construction that has been placed upon our constitution by the executive and legislative departments,[20] and convinces me that my initial dissent in the refusal of this Court to review Eley was not misplaced.

II
While I agree, in principle, with the majority's holding that the legislature cannot circumvent the "single subject" requirement of § 45 by designating an act as a code, I do not believe that the legislature violated § 45 in this instance. I think that the Pharmacy Robbery Act was valid because of the reasons I have stated in Section I of this opinion, but even assuming that the Pharmacy Robbery Act did not become a law because of the failure of the Governor to deposit it with secretary of state within 10 days, it clearly became a law when the legislature adopted Act No. 83-131 and thereby included the Pharmacy Robbery Act as §§ 13A-8-50 through -52 of the 1975 Code. See Bales v. State, 63 Ala. 30 (1879), cited in my original dissent.
After I had released my original dissent in this case, I discovered an additional case, Smith v. State, 223 Ala. 346, 136 So. 270 (1931), which I believe conclusively shows that Act No. 83-131, approved by another legislature and another Governor, properly incorporated the Pharmacy Robbery Act into the Code of Alabama. Smith was written by Chief Justice Anderson and was concurred in by all the Justices of this Court at that time: Sayre, Gardner, Thomas, Bouldin, Brown, and Foster. In Smith, the defendant was charged with violating a criminal law that, at the time of its passage by the legislature, required that the offense had to be done "knowingly." Gen. Acts 1923, § 9, p. 462. The code commissioner, when compiling the laws to be included in the Agricultural Code, omitted the word "knowingly" in his manuscript, even though he had no authority to change the intent of the lawmaker. Gen.Acts 1927, p. 60. The defendant was charged with violating that code provision. Gen. Acts 1927, p. 324.
I obtained a copy of the original record in the Smith case from the Alabama Department of Archives and History. The specific facts of that case are as follows: An affidavit made by one H.L. Flurry read, in part, as follows: "[O]n or about March 19, 1929, one J.R. Smith did sell less than the quantity he represented of a commodity described as gasoline or other liquid motor *68 fuel, commonly used in internal combustion engines, against the peace and dignity of the State of Alabama." As is apparent, the word "knowingly" was not included in the charge.
One of Smith's grounds of demurrer filed in the Court of Common Pleas of Montgomery County, was that the affidavit "fails to aver that the defendant knowingly made the sale herein mentioned." (Emphasis added.) The demurrer was overruled, and the defendant was tried, convicted, and fined $30 and the cost of prosecution. Smith appealed to the circuit court, and the solicitor filed a complaint that averred the same charge on which Smith had been convicted in the court of common pleas. In the circuit court, Smith filed a demurrer containing several grounds, but grounds 16 and 17 specifically raised the point that I believe is raised in the instant case:
"16th. The prosecution against the defendant is based upon an Act of the Legislature approved August 24th, 1927 (General Acts of 1927, Page 324). This Act, or the part thereof upon which the prosecution is based, is unconstitutional and void, in that it violates Section 45 of the Constitution in this: The title to the said Act is `To adopt the Code of laws for the State of Alabama prepared in accordance with the provisions of the Act approved February 18th, 1927, etc.' Then the Act does not adopt this code of laws, but undertakes to adopt the code of laws that was reported by the joint committee of the two Houses of the Legislature as shown upon the sheets of manuscript signed by the chairman and members of the joint committee.
"17th. The prosecution against the defendant is based upon an Act of the Legislature approved August 24th, 1927 (General Acts of 1927, Page 324). This Act, or the part thereof upon which the prosecution is based, is unconstitutional and void, in that it violates Section 45 of the Constitution in this: The title to the said Act is `To adopt the Code of laws for the State of Alabama prepared in accordance with the provisions of the Act approved February 18th, 1927, etc.' The said Act of February 18th, 1927, expressly provided that the Commissioner to be selected thereunder should have no authority to change the intent of the lawmaker. The Court judicially knows that at that time in order for the defendant to have been guilty of a crime or offense, he must have knowingly sold less than the quantity he represented of the commodity mentioned in the complaint, and there is nothing in the title to said Act of August 24th, 1927, that would indicate a ratification by the Legislature of the unauthorized act of the Commissioner in changing the intent of the lawmaker. To the contrary, the title is affirmatively misleading and nonexpressive of the subject, in that it says that the `Code of Laws' proposed to be adopted was prepared `in accordance with the provision of the Act of February 18th, 1927'." (Emphasis added.)
The demurrer was overruled, and the defendant was tried before a jury, which found him guilty and fined him $10. A sentence to hard labor was suspended to allow him to appeal to the Court of Appeals of Alabama. In his bill of exceptions on appeal, Smith raised as an issue the failure to the trial court to give a charge reading as follows:
"The Court charges the jury that if they believe from the evidence beyond a reasonable doubt that the defendant sold to witnesses Moore and Benton on March 19th, 1929, in Montgomery County, Alabama, less than the quantity he represented of gasoline, he should not be convicted, if the defendant at the time of the sale did not know he was selling less than the quantity he represented."
The Court of Appeals certified the constitutional question to the Supreme Court of Alabama, as it was authorized to do at that time by § 7322 of the Code of 1923, and the Supreme Court rendered the opinion reported at 223 Ala. 346, 136 So. 270.
In Smith, these are the basic facts concerning the constitutional question presented in that case, a question that is identical to the one presented in this case:
*69 In Smith, the original statute, Gen.Acts 1923, § 9, p. 462, required that the act be done "knowingly," viz:
"... shall knowingly sell, or offer or expose for sale." (Emphasis added.)
The act that authorized the code commissioner to collect the statutes for codification, Gen.Acts 1927, p. 60, provided, in part:
"Such commissioner shall not simply transcribe such statutes as enacted by the Legislature, but shall, without changing the intent of the law-maker, so alter the phraseology as to eliminate and exclude all redundancy, prolixity and obscurity of expression....
"Said Commissioner shall reduce to a written and systematic Code all of said statutes which shall be published in one volume and be known as `The Agricultural Code of Alabama.'" (Emphasis added.)
The act adopting the Agricultural Code, Gen.Acts 1927, p. 234, provided in part:
"That the work prepared by Harwell G. Davis, as Code Commissioner, under and in accordance with the provisions of the Act approved February 18th, 1927 (H. 273, Goode) ... as the same has been revised, amended, corrected and reported by the joint Committee of the two Houses of the Legislature, which is shown upon the sheets of manuscript signed by the chairman and members of the House Committee, is adopted and enacted as a Code of laws and shall regulate completely so far as a statute can the subjects to which it relates...."
Unquestionably, in Smith, the provisions that were included in the Agricultural Code did not include the word "knowingly," although the word "knowingly" was in the statute that was codified and the code commissioner was not authorized to change the intent of the legislature. Nevertheless, this Court held that the Code provisions prevailed:
"Whether the Act of February 18, 1927 (page 60), providing for the codification of the Agricultural Acts, did or did not authorize the codifier to eliminate this word from the original act matters not for the reason that the Legislature by the Act of August 24, 1927 (page 324), adopted the manuscript as prepared by the codifier and approved by the joint commission and the manuscript so adopted and found in the office of the secretary of state omits from this provision the word `knowingly.' This was an adoption of the Code as thus prepared. State v. Towery, 143 Ala. 48, 39 So. 309." (Emphasis added.)
My opinion in this case, and in any other case involving similar facts and legal problems, is that when the legislature adopted the cumulative supplement prepared by Michie Publishing Company, as the code commissioner, every provision in that supplement became a part of the Code of Alabama. That is the holding of the Smith case, and it was written by a highly respected Chief Justice of this Court and was joined in by all of the Justices, including Justice Bouldin, who, six years before, had authored Gibson v. State, 214 Ala. 38, 106 So. 231 (1925), which is relied on by the majority.
The Smith case is cited in 82 C.J.S. Statutes § 273 (1953) for the following proposition:

"Adoption of Manuscript. Where the legislature, by statute, adopts the manuscript as prepared by the codifier and approved by the joint commission, this is an adoption of the code as thus prepared."
It seems clear to me that, even assuming that the "deposit" provision of § 125 is mandatory, as the majority holds, and that the Pharmacy Robbery Act would not be valid except for the majority's prospective application of Eley, the legislature adopted a "manuscript" prepared by its code commissioner, which included the provisions of the Pharmacy Robbery Act, and thereby validated the code commissioner's inclusion of the Pharmacy Robbery Act into the Code of Alabama.
HOUSTON, Justice (concurring in the result).

Jan. 11, 1991
I concur to grant the rehearing and affirm.
*70 Constitution of Alabama 1901, Art. 3, § 42, provides as follows:

"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
(Emphasis supplied.)
Section 43 provides:
"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
(Emphasis supplied.)
One instance in which the executive department is given legislative power that is expressly directed or permitted by the Constitution is Art. V, § 125, which empowers the governor to veto legislation. Building Commission v. Jordan, 254 Ala. 433, 48 So.2d 565 (1950).
"Under our organic law, an important part in the performance of the legislative function is apportioned to the Governor. The extent of that legislative function thus imposed on the Governor is, in so far as it affects the questions presented on this appeal, to be found in § 125 of the 1901 Constitution...."
254 Ala. at 436, 48 So.2d at 567.
Alabama Constitution 1901, Art. V, § 125, provides, in pertinent part:

"Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor...."

(Emphasis supplied.)
On its face this language is plain and unambiguous; however, this Court in construing this section has held:
"We are of the opinion that such a presentation may be made by delivery to the recording secretary of the Governor or other person to whom that authority has been delegated by the Governor."
Building Commission v. Jordan, 254 Ala. at 440, 48 So.2d at 571. (Emphasis supplied.)
Therefore, we have permitted the spirit of § 125 to control the otherwise plain and unambiguous language of that section.
"If any bill shall not be returned by the governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent the return, in which case it shall not be a law; but when return is prevented by recess, such bill must be returned to the house in which it originated within two days after the reassembling, otherwise it shall become a law...."

Alabama Constitution of 1901, Art. V, § 125. (Emphasis supplied.)
On its face, this language is plain and unambiguous. The Governor has two days after the reassembling of the legislature to return the bill and veto the legislation; however, this Court in construing this sentence has held:

"[W]here the Governor is unable to return a bill on the sixth calendar day after presentation because the originating body is not in session on that day, he must return it on the next legislative day thereafter if it is the last day on which the Legislature can meet under the Constitution. There is no second legislative day on which he can make a return. Any other construction would give to the Governor the power to pocket veto a bill presented to him more than five days prior to final adjournment, which is clearly contrary to the express language of said § 125."
Building Commission v. Jordan, 254 Ala. at 441, 48 So.2d at 573. (Emphasis supplied.)
Therefore, we have permitted the spirit of § 125 to control the otherwise plain and unambiguous language of that provision.
*71 The majority in this case is refusing to go behind the language of the pocket veto provision of this section to discern the intent of the framers.
This Court has taken two seemingly different approaches in its review of Constitutional provisions.
The first:
"The Constitution is a document of the people. Words or terms used in that document must be given their ordinary meaning common to understanding at the time of its adoption by the people. Wright v. United States, 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938). In construing a constitutional provision, the courts have no right to broaden the meaning of words used and, likewise, have no right to restrict the meaning of those words. We are, therefore, not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution. McPherson v. Blacker, 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1892).
"This general rule was restated by the Supreme Court of Florida in Ervin v. Collins (Fla.), 85 So.2d 852, 855 (1956), as follows:
"`We are called on to construe the terms of the Constitution, an instrument from the people, and we are to effectuate their purpose from the words employed in the document. We are not permitted to color it by the addition of words or the engrafting of our views as to how it should have been written ... [and] it must be presumed that those who drafted the Constitution had a clear conception of the principles they intended to express, that they knew the English language and that they knew how to use it, that they gave careful consideration to the practical application of the Constitution and arranged its provisions in the order that would most accurately express their intention.'
"But where the language included in the Constitution is not explicit or admits of doubt, it is our responsibility to determine what was intended."
McGee v. Borom, 341 So.2d 141, 143-44 (Ala.1976).
The other:
"Even should it be argued that the language of [the constitutional provision] is not ambiguous, such a construction as appellants contend for, is clearly contrary to the spirit of the [constitutional provision]. This court has frequently held that:
"`"The spirit and not the letter should prevail when the latter would lead to an injustice or absurdity." Tennessee Coal, Iron & R. Co. v. State, ante [235 Ala. 152] p. 152, 177 So. 905, 906, and cases there cited.' Broaddus v. Johnson, 235 Ala. 314, 179 So. 215 (1938)."
Hamilton v. Autauga County, 289 Ala. 419, 430, 268 So.2d 30, 40 (1972). (Emphasis supplied.)
In the case at issue, both houses of the legislature duly passed the Pharmacy Robbery Act, 1982 Ala.Acts No. 82-434, codified at Ala.Code 1975, § 13A-8-50 through -52. In doing so, the legislative department exercised its legislative power in accordance with §§ 42, 61, 62, 63, and 66 of the Constitution. It can be presumed that this act of the legislature was intentional.
In accordance with § 125 of the Constitution, this bill, which had been passed by both houses of the legislature and signed by the presiding officer of each house, was presented to the Governor (or his representative). The Governor signed it under the word "Approved" and the date and the time that he signed it were recorded under his signature. Section 125 of the Constitution is titled "Presentation of bills to governor for signature; veto power of governor; procedure for passage of bill after veto by governor; effect of failure of governor to sign bill." (Emphasis supplied.)[21] The first sentence of § 125 provides, in pertinent part:

*72 "Every bill which shall have passed both houses of the legislature ..., shall be presented to the governor; if he approve, he shall sign it...."

(Emphasis supplied.)
We must presume that the Governor intentionally approved the bill, for he signed it under the word "APPROVED" and the date and the time that he signed it were inserted under his signature. Nothing more is required for the Pharmacy Robbery Act to become law. The Governor did not exercise his power to veto the bill. Whether this bill was presented to the Governor on the first day that legislation could be enacted or on the day of adjournment, when the Governor signed the bill he approved it.
The United States Constitution, Art. I, § 7, provides, in pertinent part:
"Every bill which shall have passed the house of representatives and the senate, shall, before it become a law, be presented to the president of the United States; if he approve he shall sign it...."
Two years before the Alabama Constitution of 1901 was drafted and ratified, the United States Supreme Court interpreted that constitutional provision in La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454, 20 S.Ct. 168, 178, 44 L.Ed. 223 (1899), as follows:
"After a bill has been presented to the President, no further action is required by Congress in respect of that bill unless it be disapproved by him and within the time prescribed by the Constitution be returned for reconsideration. It has properly been the practice of the President to inform Congress by message of his approval of bills, so that the fact may be recorded. But the essential thing to be done in order that a bill may become a law by the approval of the President is that it be signed within the prescribed time after being presented to him. That being done, and as soon as done, whether Congress is informed or not by message from the President of the fact of his approval of it, the bill becomes a law, and is delivered to the Secretary of State as required by law."
(Emphasis supplied.)
The remaining portion of § 125 deals with "veto power of governor; procedure for passage of bill after veto by governor; [and] effect of failure of governor to sign bill," none of which is applicable. (Emphasis supplied.)
The majority concentrates on the wording of the clause which relates solely to the Governor's right to pocket veto a bill. This clause begins with the conjunction "but" and is the final clause in the following sentence:
"If any bill shall not be returned by the governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent the return, in which case it shall not be a law; but when return is prevented by recess, such bill must be returned to the house in which it originated within two days after the reassembling, otherwise it shall become a law, but bills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor at any time within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law."
In the Official Proceedings of the Constitutional Convention of the State of Alabama, May 21, 1901, to September 3, 1901, Vol. 1, p. 624, Mr. James E. Cobb, a delegate, makes this observation in relation to the Governor's right to pocket veto a bill:
"Give him [the Governor] this ten days and he will have this opportunity to deliberate, to consider, and to examine and thus avoid the difficulty of refusing to permit a good measure to become a law by reason of the lack of opportunity afforded [the Governor] to examine it. What is the harm, I repeat, and as has been repeated heretofore? If [the Governor] approves the bill, it is a law; if *73 he refuses to approve it, it is not a law."

(Emphasis supplied.)
The verb "deposit" means "[t]o commit to custody, or to lay down; to place; to put; to let fall (as sediment)." Black's Law Dictionary 438 (6th ed. 1990). Is there something that the secretary of state must do to a bill approved by both houses of the legislature and by the Governor before it can become law? No.
The supreme executive power of the state is vested in the Governor (Alabama Constitution, § 113). The secretary of state is a member of the executive department (§ 112). The secretary of state does not authenticate the Governor's approval of laws (§ 134). Therefore, there is nothing for the secretary of state to do before a bill passed by both houses of the legislature and approved by the Governor becomes law. It becomes law when it is approved by the Governor. Therefore, I construe the provision relating to deposit with the secretary of state as being directory only, not a prerequisite to a bill becoming law.
In my opinion, a veto requires an intentional act and should not result from a negligent failure to act. If the Governor does not take affirmative action during a legislative session, a bill becomes law. If the Governor takes affirmative action to approve a bill during a legislative session, it becomes a law upon the Governor's approval. How does one know whether the Governor has approved the bill? One checks with the Governor's office. After six days, the bill becomes law without the Governor's approval. How does one know whether the Governor has vetoed a bill? One checks with the Governor's office and/or the clerk of the house in which the bill originated. How does one know whether a bill has been approved by the Governor after the legislature has adjourned? One checks with the office of the Governor and/or the secretary of state.
In my opinion, if a bill is presented to the Governor within 5 days before final adjournment of the legislature, and the Governor does not sign that bill within 10 days after adjournment of the legislature, there is a presumption that the Governor intended to veto that bill. However, if the Governor signed the bill within 10 days after adjournment of the legislature, there can be no presumption of intent to veto, for the Governor has approved the bill within the 10-day period. If a bill is approved but not deposited with the secretary of state's office within 10 days of legislative adjournment, there can likewise be no presumption of intent to veto, for the Governor has approved it within the 10-day period. At most, there is a negligent failure to commit to the custody of the secretary of state the approved bill that became a law upon its approval by the Governor. The public can know that it is the law by checking with the Governor's office, just as it can know when a bill became law during a legislative session by checking with the Governor's office.
What does § 125 protect? It protects the Governor's right to approve or to veto a bill presented to him by the legislature the Governor's power to veto a bill duly passed by a co-equal branch of government invested with "legislative" power.[22]
Therefore, because the Governor approved the Pharmacy Robbery Act on May 4, 1982, at 3:00 p.m., which was within 10 days after legislative adjournment, that Act became law on that day, even though it may not have been deposited with the secretary of state until May 10, 1982. This Act was published in the 1982 Acts of Alabama, Regular Session, some time prior to October 21, 1982 (the date that volume was received by the Alabama Supreme Court and State Law Library).
Though we cannot tell from the record the date of the offense, Coker was convicted of pharmacy robbery on his plea of guilty on or about May 18, 1984.
*74 For the foregoing reasons, I concur with the majority in affirming Coker's conviction.
NOTES
[1] This span of act numbers includes a number of House and Senate joint resolutions. Of course, no act is at issue here other than H.B. 362, i.e., the Pharmacy Robbery Act, and no proof has been made of the date of deposit of any bill other than H.B. 362; nevertheless, the uncontested allegations as to the effect of our decision in this case are important with respect to the question of prospective application.
[2] Presumably the provisions of most of these bills enacted in 1969 and 1971 were incorporated into the 1975 Code and thereby became law, but many were presumably not codified either because they were local bills or for other reasons. The Alabama State Employees' Association, as amicus curiae, also provides a similar list from the 1963 legislative session.
[3] See Acts of Alabama, 1982 Third Special Session, p. 300.
[4] This Act is one of those which the State now says was deposited more than 10 days after the end of a legislative session. Even if we did not make prospective the construction of the deposit requirement as mandatory, the code commissioner's acts in drafting the code could be held valid, as the actions of a de facto officer, that is, one who acted "pursuant to a public, unconstitutional law, before the same is adjudged to be such." 63A AmJur.2d, Public Officers and Employees, § 579 (1984) (footnote omitted). Furthermore, the adoption in 1977 of the manuscript, prepared by the commissioner and revised by the legislature, cured any defects in the appointment of the commissioner.
[5] This is one of only two instances in which the Court has applied the subsequent codification rule to a "partial code." The Court in Gibson, supra, had held that although the 1923 act adopting an "Agricultural Code" did not meet the codification exception to § 45, it nevertheless pertained to only a single broad subject. Thus, the 1927 "Agricultural Code" presumably contained a single subject, and, as Smith held, the act adopting the 1927 Agricultural Code changed the substance of the original 1923 act from which the commissioner had worked insofar as the 1927 act omitted the 1923 requirement that only knowing use of false measures was criminal.
[6] Ironically, this is one of the bills alleged by the attorney general and the amici to have been pocket vetoed, under the mandatory construction of the deposit requirement, along with H.B. 362.
[7] Sections four and five of Ala.Acts 1977, Act No. 20, save certain laws from repeal by enactment of the 1975 Code, but if we were to hold that many such laws had been vetoed, they would not be valid in spite of the effort to save them from repeal.
[8] I dissented in Ex parte Eley, 423 So.2d 305 (Ala.1982), because I thought that this Court should review "the opinion of the Court of Criminal Appeals, 423 So.2d 303, insofar as it [held] that Sundays [were] not excluded from the ten-day period allowed a Governor under § 125," but I specifically stated there that "[i]n dissenting, I should not be understood as saying that the opinion [of the Court of Criminal Appeals in Eley ] is incorrect in this regard," but that I thought that the petitioners had presented legal questions sufficient for this Court to grant certiorari review. One of the questions presented by the Eley petition was the interpretation made by the Court of Criminal Appeals of § 125 of the Constitution.

The Eley decision admittedly was made by the Court of Criminal Appeals without "`[a] search for [the] purpose or intention [of the framers of Section 125].'" At the time Eley was decided, I did not read the debates of the Constitutional Convention of 1901 to try to determine the purpose and intent of the framers, but I have now had an opportunity to do that, and after reading substantial portions of the debates of the Constitutional Convention of 1901, I have become convinced that the framers did indeed intend, as the majority holds, that bills presented to the Governor within five days of the final adjournment of the Legislature are pocket vetoed if the Governor does not both approve and deposit them with the secretary of state within 10 days of adjournment.
While I have not done in-depth research of the constitutional debates surrounding the adoption of § 125 and specifically regarding the veto power of the Governor in regard to bills that he can approve or disapprove after the Legislature has finally adjourned, I have read some of those debates, and I have come to the conclusion that Eley, although made without benefit of "`[a] search for [the] purpose and intention [of the framers],'" is, nevertheless, correct.
Most of the debates of the convention center around the power of the Governor to approve or disapprove a bill once the Legislature has finally adjourned.
Thomas Goode Jones was chairman of the Committee on the Executive Department, and on Friday, June 7, 1901, the 14th day of the Convention, on call of the Standing Committees, the following report was filed concerning what is now Section 125:
"Section 13 of the present Constitution has been amended, so as to authorize the two Houses when the Governor vetoes a bill, to amend it to meet his objections, instead of passing it over his veto. And the Governor is given ten days after final adjournment in which to approve bills, before him at that time. A recess of the General Assembly as well as an adjournment excuses the Governor from returning a bill within six days, the time fixed in the Article within which, if the General Assembly is in session, the Governor must return a bill, or it will become a law. Section 14 provides the procedure in case of a veto of a part of any appropriation bill, to remove doubt, heretofore existing, whether the original bill shall be returned in such case."
Official Proceedings of the Constitutional Convention of the State of Alabama, May 21, 1901, to September 3, 1901, Vol. 1, p. 436.
The provision regarding the approval by the Governor of bills after the final adjournment of the Legislature was a provision that had not been contained in any of our prior State Constitutions, and the change generated some spirited debate. The Committee on the Executive Department had proposed that there be included in what is now Section 125 language to the effect that "but bills presented to the Governor within five days before the adjournment of the General Assembly may be approved at any time within ten days after the final adjournment, if approved and deposited with the Secretary of State within that time." Official Proceedings, p. 618. Mr. John T. Heflin, of Chambers County, moved to amend what is now Section 125 by striking out that language. Official Proceedings, p. 619. He was supported in his position by former Governor William C. Oates. Official Proceedings, p. 621. During the debates over the propriety of giving the Governor the power to pocket veto a bill, the following exchange took place between Mr. Samford and Mr. Heflin, author of the amendment that would have stripped the Governor of any power to approve or disapprove of a bill after final adjournment of the Legislature:
"MR. FITTSI move to table the amendment of the delegate from Chambers.
"MR. SAMFORDI hope you will withdraw that. I just want to say one word.
"MR. FITTSI will withdraw it if you will renew it for me when you say that word.
"MR. HEFLIN (Chambers)I wish the gentleman would withdraw it for me.
"MR. HEFLINAll right, I will pay you back.
"MR. SAMFORDOrdinarily, when the legislature adjourns, all legislation for that session ceases. But if this section is adopted without amendment it will be impossible for the people of Alabama to know what the law will be at the adjourning of the legislature. Rights of property, within ten days, may be involved in it. Crimes may be involved in it. When the legislature adjourns, all the acts are known to the people but here ten days afterwards, an act that today may be perfectly innocent is made a crime.
"Now, as to questions of property involved in it: Men make contracts and transactions of every description that are perfectly valid but a law is approved ten days afterwards of which the parties to the transactions have no knowledge whatever and they become invalid and this will give to rise to litigation. I can see no reason for continuing legislation when the General Assembly is not in session. For ninety years we have gotten along without such a rule. When the General Assembly adjourns, all legislation for that session ceases. I can see no reason why we should depart from that rule now and I hope the motion of the gentleman from Chambers, to strike out will prevail.
"And now, in accordance with my promise to the delegate from Tuscaloosa, although against my judgment and wishes, I renew the motion to table the amendment.
"MR. JONES (Montgomery)The Committee will withdraw the motion to table so as to allow those other gentlemen to be heard, although they would not let me speak the other day under the same circumstances.
"MR. HEFLIN (Chambers)I do not desire to detain the Convention at this time with a speech, but I differ with my friend from Macon who says he does not see anything in the argument of the gentleman from Montgomery. We have three departments of government in this State, the Judiciary, the Executive and the Legislative. They are supposed to be independent of each other but the position the gentleman from Macon takes puts the Legislative Department absolutely in the hands of the Chief Executive after the General Assembly has adjourned and the members have gone home. This Committee, in some of the lines above this part which I desire to strike out, has provided that when a bill goes to the Governor and he finds objections thereto, he can return his objections with the bill to the House and the House can amend to suit his objections, and the Senate can do the same, returning it then to the Governor who has the power to approve. It provides further that if the House fails to agree with the Governor in his suggestions, they have a right to ignore those suggestions and, representing the sovereign people of Alabama, to override the veto of the Governor of the State. It is a right that members of the General Assembly have representing their constituents. I submit to this Convention that a bill could be submitted to the Governor within five days
"MR. SAMFORDWill the gentleman submit to a question?
"MR. HEFLINI will.
"MR. SAMFORDSuppose a bill is passed by both Houses of the legislature in the last five days of the session and is sent to the Governor, has he not the power to keep it and not return it to the legislature and thereby make himself part of the legislative power just as much as under this clause?
"MR. HEFLINThat is true.
"Mr. SAMFORDDoes this change his power over the legislature? Is not the effect simply to give him more time for consideration?
"MR. HEFLINThat is true as to the five days. During those five days he can return it or can refuse to return it. But this Committee undertakes now to extend ten days more of time when the gentleman might be representing the County of Pike in this hall and would have no right to recall his bill from that Governor who might purposely allow it to die by failing to return it to the Secretary of State with his approval.
"MR. JONES (Montgomery)This time is not extended to any bill on earth except those pending at the time the Legislature adjourns and which have been sent to him within five days before the adjournment and that for the purpose of approval.
"MR. HEFLIN (Chambers)I think I understand this question and I am objecting to giving the Governor the right to allow a bill to die without expressing his opinion."
Official Proceedings, 625-27.
The amendment offered by Mr. Heflin was tabled and the Committee version of what later became § 125 was approved. Official Proceedings, 628.
It seems obvious from these debates that the Convention intended that a bill that was not both approved and deposited with the Secretary of State would not become law.
[9] I obtained a certified copy of this "authenticated copy," and I attach it to this dissenting opinion as Appendix A.
[10] Article IV, § 2 of the 1868 Constitution provided:

"The style of the laws of this State shall be: `Be it enacted by the General Assembly of Alabama.' Each law shall contain but one subject, which shall be clearly expressed in its title; and no law shall be revised or amended unless the new act contains the entire act revised, or the section or sections amended; and the section or sections so amended shall be repealed."
As is apparent, the substance of this Constitutional provision is contained in § 45 of the Constitution of 1901.
[11] On original deliverance, as is shown in my dissenting opinion, I was of the opinion that § 125 of the constitution required the Governor to deposit an approved bill with the secretary of state before it could become a valid law. I have now concluded, based upon extensive research on my part, and after a consideration of the State's brief and several amicus briefs filed in support of this rehearing application, that Eley, which holds that a bill must be "deposited" with the secretary of state before it can become a law, was incorrectly decided.
[12] Amicus curiae briefs in support of the State's application for rehearing were filed by the Alabama Department of Environmental Management; the Alabama League of Municipalities; Dr. Wayne Teague, as State Superintendent of Education; Dr. Fred Gainous, as Chancellor of Postsecondary Education; the Alabama Department of Conservation and Natural Resources; the Alabama State Employees Association; the Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama; the Alabama District Attorneys' Association; the Alabama Association of School Boards; the Mobile County Deputy Sheriffs' Law Enforcement Association; the Association of County Commissions of Alabama; the City of Auburn; and the Board of Education of Madison County.
[13] In an amicus brief, the Alabama Department of Environmental Management states the following concerning the procedures that were used after the adoption of the pocket veto provision in § 125:

"After the adoption of the 1901 Constitution, the next Session of the Alabama Legislature was held in 1903. In 1902 J. Thomas Heflin of Chambers County was elected Secretary of State of Alabama. One might expect that Mr. Heflin was quite aware of any and all changes incorporated into the 1901 Constitution and in particular Section 125.
"Yet, a review of the original acts of the 1903 Legislative Session reveals an interesting history of the legislative process in Alabama.
"From 1903 up to and including the 1947 Session of the Alabama Legislature, the original acts have inscribed upon them three dates: (1) the date the bill was delivered to the Governor, (2) the date that the bill was approved by the Governor, and (3) the date that the act was proofread. Beginning in the 1949 Legislative Session, the date that the bill was delivered to the Governor has been omitted and the date that the Secretary of State's office received the Act was included; however, this procedure has not been consistent.
"From the Legislative Session of 1903 up to and including the 1947 Session, there was no indication on any of the original Acts, subject to the pocket veto provision of Section 125, that those acts were ever deposited with the Secretary of State."
I have checked the Acts of Alabama enacted both before the adoption of the 1901 Constitution and thereafter, and the only reference I find in the printed acts is the date the Governor approved the bills. Prior to 1949, only the date of the Governor's approval was shown on the printed acts; afterwards, the date and actual time of his or her approval is shown.
[14] In my original dissent, I set out some of the history and debates surrounding the adoption of the pocket veto provision, which was a provision that had not been contained in any of our prior State constitutions. In this concurrence in the result, I am not going to set out those debates again, but I do want to use a statement made by Thomas Goode Jones of Montgomery, a former Governor and the chairman of the Committee on the Executive Department, who spoke to the true focus of § 125 when he stated:

"[I]t is known ... that towards the heel of the Session, a governor is so crowded with bills that he cannot read them.... It is absolutely a physical impossibility. He has to rely on the Attorney General and some trusted friends and they read in a hurry to avoid 12 o'clock at night on the last night and he is acting in the dark. The object of this provision is to give the Governor in whom the people trust an opportunity to calmly consider the mass of the bills that is always piled on his table the night the General Assembly adjourns.... [W]e must trust the individual who is Governor. It is the easiest thing in the world if the Governor wants to, with 200 bills locked up in that little office that Governor Oates so eloquently described yesterday afternoon, to go off and come back a week afterwards and sit in there in private and if he is a bad man simply say to the Secretary, `Here Mr. Secretary, I signed this before the General Assembly adjourned.'"
Official Proceedings of the Constitutional Convention of the State of Alabama, Vol. 1, p. 620 (1901).
[15] See Art. V, § 21, Constitution of Alabama 1875.
[16] In the 1868 and 1865 Constitutions, the Governor was the keeper of the Great Seal. See Art. V, § 12, Constitution of Alabama 1868, and Art. V, § 14, Constitution of Alabama 1865. Under the provisions of the 1861 Constitution, the secretary of state was appointed by joint vote of both houses of the general assembly, and his duties were much the same as under § 134 of the 1901 Constitution, "to keep a fair register of all official acts and proceedings of the governor." Art. IV, § 14. For more than a century now, the secretary of state has been a constitutional officer and a member of the executive department and has been elected by the people.
[17] One of the amicus curiae briefs indicates that from the time of the adoption of the 1901 Constitution until the late 1940's, secretaries of state did not stamp on the enrolled bill the date of its receipt, as was done in this case. Obviously, there are a substantial number of bills that were not "deposited" with the secretary of state within the 10-day period, even though they were approved by the Governor within that time.
[18] Although I have not found an Alabama case that discusses the functions and powers of the secretary of state, I have found a decision from another jurisdiction which has addressed the question of whether the secretary of state has the power to determine if any particular bill or act will be a law of the land. In Illinois ex rel. Harless v. Hatch, 33 Ill. 9 at 142 (1863), the Supreme Court of Illinois answered in the negative: "The secretary cannot decide what acts make a law. He has nothing to do with the working of the machinery by which laws are made." Id. at 147.
[19] In its initial brief, the State, in arguing that the Governor did not pocket veto the Pharmacy Robbery Act, only briefly mentioned this possible effect:

"[T]he claim of the petitioner in this case is that Act 82-434 was also accidentally vetoed in the same manner as the enactments at issue in Eley and [State v. ] Miller [426 So.2d 949 (Ala.Crim.App.) ], above. If this is so, it raises the possibility that there may be throughout the Acts of Alabama statutes which, although accepted and acted on by citizens and the government for many years, may have been accidentally vetoed. Happily, we need not explore the full parameters of this legal `chamber of horrors' in order to defend the instant conviction."
During oral argument, Justice Houston questioned Mr. Marston, the State's attorney, on whether the Pharmacy Robbery Act was a "law," and Mr. Marston responded that "it became a law when they enacted it, and if that doesn't work, we got a lot of laws, a lot of problems with our law." He did not elaborate further.
[20] In Solomon v. Cartersville, 41 Ga. 157 (1870), the question concerned the time when the Governor should sign bills in the exercise of his legislative powers, and that court yielded its judgment on the question to the construction placed upon the constitution by the executive department, because of the public interest involved. The court said:

"If this was an original question, independent of any construction heretofore given by the executive department of the state government, to this clause of the Constitution, we should be inclined to hold that the Governor could not approve and sign any bill after adjournment of the General Assembly; but on looking into the past history of our legislation, we find that it has been the practice for many years for the Governor to take five days after the adjournment of the General Assembly for the revision of bills passed by that body and to approve and sign the same within that time, but not afterwards, and that a large number of the most important acts now upon the statute books of the state have been so approved and signed, which usage and practice of the executive department of the state government should not now, in our judgment, be disturbed or set aside."
This case has been cited and followed by many other courts, including the United States Supreme Court in Town of Seven Hickory v. Ellery, 13 Otto 423, 103 U.S. 423, 26 L.Ed. 435 (1880).
[21] Although the title to § 125 is not an official part of the Constitution, see Code Commissioner's note, Ala.Code 1975, Vol. 1, p. 77, it does effectively divide that section into four distinct parts, in accordance with my understanding of § 125.
[22] "Legislative Power. The lawmaking powers of a legislative body, whose functions include the power to make, alter, amend and repeal laws." Black's Law Dictionary 900 (6th ed. 1990).